## STATE OF OREGON *v.* ABRAMS.

MURDER—INDICTMENT—SURPLUSAGE WORDS IN.—In an indictment charging the defendant with having "purposely and of deliberate and premeditated malice killed" the deceased, "by then and there unlawfully and feloniously shooting him," &c., *Held*, That the words "unlawfully and feloniously" are surplusage, and that the indictment charges murder in the first degree. A record reciting that the defendant "personally appeared in open court and was duly arraigned on said indictment," &c., held sufficient as to the arraignment. It is no ground of error that the court in which a criminal action for a felony is pending, sets the time for trial during the absence of the defendant; it is no part of the trial itself. No objection to the proceedings in the circuit court, in any case, can be considered in the supreme court, which has not in effect been passed upon by the lower court. Misconduct of a party or his attorney during the progress of a cause through a lower court, preventing a fair trial, without error on the part of the court, or default of the injured party, must first be presented as ground for a new trial to make it available on appeal. Where a defendant in a criminal action offers himself as a witness in his own behalf on the trial, under the law of this state, he subjects himself to the same rules of cross-examination as an ordinary witness. The substance of the contradictory statements, imputed to a witness in the impeaching questions only, need be proved to impeach him. The mere opinion of a non-expert as to mental condition, without the facts on which it is based, or the opinion of an expert even, founded on personal observation, without proof of his opportunities for making the same, is inadmissible. The conduct of a party, and what he did or said at a given time, are competent evidence on the issue as to whether or not he was intoxicated at such time. Where evidence offered and admitted against objection, on a criminal trial, which so far as the record shows, was equally applicable to either of two purposes, one proper and the other not, this court will presume on appeal that it related to the former, and was properly admitted. Conviction to a "reasonable and moral certainty" excludes reasonable doubt. A definition of the "deliberate use of a deadly weapon" under subdiv. 1 of sec. 765 of the civil code, as "an intentional use, a use that is the result of a resolution, purpose or design, formed in the mind and reflected upon, and not done in self-defense," is correct, and sufficiently explicit.

APPEAL from Lane County.

*Strahan & Bilyeu and Weatherford & Blackburn*, for appellant.

*E. G. Hursh, District Attorney, and Geo. B. Dorris*, for respondent.

By the Court, WATSON, C. J.:

The appellant, Abrams, was indicted by the grand jury of Lane county at the April term of the circuit court for said county, in the present year. The body of the indictment is as follows: "H. W. Abrams is accused by the grand jury of the county of Lane, in the state of Oregon, by this indictment of the crime of murder, committed as follows: The said H. W. Abrams, on the 19th day of January, A. D. 1883, in the county of Lane and state of Oregon, then and there being, purposely and of deliberate and premeditated malice, killed J. G. Brownlee by then and there unlawfully and feloniously shooting him the said J. G. Brownlee with a revolving pistol," &c.

Upon this indictment Abrams was tried, found guilty of murder in the second degree, and sentenced to imprisonment for life. The appeal is from this judgment. He claims, in the first place, that the indictment only charges him with manslaughter, and that it will not support his conviction for the higher crime of murder in the second degree. This view is based wholly on the effect of the employment of the words "unlawfully and feloniously" in the indictment. But evidently these words refer solely to the act of "shooting," and qualify it alone. They do not affect the preceding allegation as to the particular intent with which the killing was done. Indeed, the "unlawful and felonious" nature of the "shooting," so averred, is not only

entirely consistent with the previous charge of purpose, malice, deliberation and premeditation, but is included in it; and while unnecessary, it cannot have the effect of reducing the grade of the crime as previously charged. It is plainly, we think, an instance of surplusage, which does not vitiate.

In the second place, he contends that it does not appear from the record that all the requirements of a legal arraignment under the statute were complied with in the court below. It is true the record in this instance does not show an observance of all such requirements in detail; but it does recite that he "personally appeared in open court and was duly arraigned on said indictment," &c. And this has been held a sufficient record of arraignment by this court. (*State* v. *Lee Ping Bow*, 10 Or., 27.)

The next objection is, that the court below on April 19, 1883, made an order during his absence setting the trial for a specified future day. But the appointment of a day for the trial to begin was no part of the trial, and was not a matter upon which he could have insisted to be heard, even if he had been present. The objection is clearly untenable.

There is still another objection based upon the alleged defectiveness of the record. It is that it does not appear from the record of the case brought here on the appeal "that any grand jury was empanelled, sworn and charged" at the term of court at which the indictment purports to have been found, as prescribed by the criminal code, or that any foreman was appointed. But this is easily answered. The transcript on appeals in criminal as well as civil cases, is a certified copy of the judgment roll, with copy of the notice of appeal, &c. (Crim. Code, sec. 241.) What papers shall compose the judgment roll in criminal cases, is pre-

scribed by section 212, and the record of the proceedings specified in the objection·is not among them.

Several objections were made and exceptions saved, at the trial, by appellant's counsel, on the ground of remarks made by counsel for the prosecution to the jury upon matters not in evidence.    Some of these remarks, attributed to Mr. Dorris, were undoubtedly improper, and can hardly be condemned with too much severity.    But, however reprehensible, there is one insuperable obstacle to their being considered here as ground for reversal.    *They involve no error of the court below.·*    We have announced this ·principle before, (*State* v. *Anderson,* 10 Or., 448) and we now lay it down as a rule to which there can be no exceptions, that no objection to proceedings in the court below can be heard in this court which is not based on alleged error in judicial action on the part of the lower court.    If abuses of the nature complained of in this instance, occurring during the progress of a cause through the lower court, without fault on its part, or want of skill or attention on the part of the complaining party, prevent a fair trial, he has his remedy under subdiv. 1 of sec. 232 of the civil code [which applies in both civil and criminal cases alike] making provision for new trials.    But he cannot come here in the first instance and claim a reversal of judgment on the ground of irregularities, which have never been submitted to the lower court for its determination.    In the only instance in which the question as to the admissibility of comments made by counsel for the prosecution to the jury was ruled upon by the court below and exception taken by the appellant, we are satisfied there was no error.    Mr. Burnett for the defense had said in his address to the jury:    "That the prosecution had not been able to call a single witness to show that defendant's character was bad."    Mr. Mallory for the prose-

cution said in reply: "Counsel had no right to make such statement. If counsel had put the prisoner's character in issue, instead of its appearing bright and without a blemish we might have shown it was covered with dark and damning spots." This was simply argument in reply to Mr. Burnett, and not the assertion of any new fact outside of the record; and in our judgment it was not objectionable on this ground.

On the trial, Abrams was examined as a witness for the defense, and testified generally to what transpired at the meeting between Brownlee and himself, during which the homicide occurred. Upon his cross-examination he was asked certain questions with a view to his impeachment by proof of contradictory statements made previous to the trial. His counsel objected to the questions being put, on the ground that the evidence sought was in the nature of confessions, and therefore original evidence, which the prosecution had no right to extort from him on cross-examination, or offer in rebuttal. But the objection was overruled and the point saved by an exception. Abrams having denied making the contradictory statements imputed to him by such questions, the impeaching witnesses, Samuel Hauser and Clay Zumwalt, were called in rebuttal, and permitted to testify concerning the same against the same objection. The objection was good in neither instance. Sec. 166 of the criminal code, as amended by the act of October 25, 1880, makes the accused in all criminal trials and proceedings a competent witness at his own option; and when he does avail himself of this privilege he subjects himself to the same rules of cross-examination as any other witness. (Laws of 1880, p. 28; *State* v. *Ober*, 52 N. H., 459; S. C. 13 Amer. R., 88; *Connor* v. *The People*, 50 N. Y., 240.) The additional grounds of objection to the testimony of

Hauser and Zumwalt are equally untenable. It was not essential to the admissibility of their testimony that they should be able to testify that Abrams used the specific and particular words given in the impeaching questions. If the declarations testified to by them were the same in substance that was sufficient. (*Patchin* v. *Ins. Co.*, 13 N. Y., 268.)

W. J. Bramwell was called by the defense to prove contradictory statements made by C. C. Baber, a witness for the prosecution. After testifying in chief in respect to such statements he was asked the following questions on cross-examination: "State what he, Baber, did say about the shooting at the end of the counter, and going down the aisles?" And further on: "Did he have a diagram before him at the time of the conversation?" The court ruled that the questions should be answered, and appellant's counsel took an exception. The contradictory statements related to the same shooting, and it is difficult to conceive of any valid objection to requiring the impeaching witness to state all that Baber said on the subject at the time. Nor would the right of cross-examination end here. To test the memory and fairness of the impeaching witness, everything that was said or done during the conversation testified to, was a proper subject of inquiry on cross-examination. The prosecution also asked this witness on cross-examination if he had "told any person or any of the attorneys for the defendant about this conversation;" and asked other witnesses for the defense similar questions on cross-examination; and the court required the questions to be answered over the appellant's objections. There was no error in these rulings. However slight and unsatisfactory, such evidence, if elicited, would tend to show the state of the witness' feeling towards the defense and have some bearing upon the question as to

his bias. It is a common, and, in our judgment, a perfectly legitimate method of affecting a witness' credit in judicial trials.

During the trial, the defense called J. F. Waters as a witness, and after showing by his examination, that he was an "intimate" personal acquaintance of Babers—who was an eye-witness of the shooting of Brownlee by Abrams, and had testified in regard thereto on behalf of the prosecution—asked him this question: "Do you know the mental capacity of C. C. Baber under exciting circumstances, for receiving and retaining facts, and of afterwards relating what transpired under such circumstances, and if so, please state what it is?" The question was objected to as incompetent, and excluded by the court. We think its exclusion was proper. If such evidence could be deemed admissible in any case—upon which we need express no opinion—it is quite evident that no foundation for its introduction was laid in the present instance. The witness was not offered as an expert, and yet it was sought by the question to elicit his opinion without the facts upon which it had been formed. But if the witness had been shown to be an expert, still he should not have been allowed to testify as to his opinion, as it had not been shown that he had ever seen Baber "under exciting circumstances" of any kind, much less circumstances similar to those attending the shooting of Brownlee. The same question was propounded to other witnesses for the defense, under the same circumstances, and ruled out in the same manner.

Abrams having testified that his hat was injured in a particular manner in an encounter with Brownlee immediately before the shooting, which was on the 19th day of January, 1883, the prosecution was permitted to prove by Emmet Butler, in rebuttal, against the objection of the ap-

pellant, that he saw the appellant and several others engage in a scuffle during the month preceding, in which the appellant's hat was injured in a similar manner, to some extent, as he had testified to its being injured in the encounter with Brownlee. The witness also testified that he did not know whether it was the same hat, but that it was the same kind of hat. The material ground of objection is, that the identity of the hat was not established so as to make the testimony admissible. But we think there was evidence enough on this point to justify the submission of the matter to the jury, and consequently that there was no error in so doing.

The defense also introduced evidence to show that Brownlee was intoxicated at the time of the shooting, and the prosecution in rebuttal offered W. S. Lee, who testified to having seen Brownlee only a few minutes before he was killed, and that he was not drunk at that time. The prosecution was then allowed to prove by the witness, against the objections of the appellant, what Brownlee did and said at the same time. Such evidence was competent on the question as to whether Brownlee was intoxicated at the time of the shooting or not. And such was evidently its object. These were facts upon which the jury were as competent to form an opinion as to Brownlee's intoxication as the witness was himself. The prosecution also called J. H. Bowerman in rebuttal, who testified that he had lived in Oregon three and a half years; that he first knew Brownlee in Iowa, and knew something of the effect of liquor on him; and that he shipped with him at Council Bluffs. The prosecution was then allowed to ask him the following questions against the appellant's objections: "How long were you from the time you left Omaha until you reached Portland?" Ans. "About seven days." "Did you see him drink in this town?" Ans.

"Not any." The prosecution had no right to introduce such evidence to rebut the evidence offered by the defense to show that Brownlee was intoxicated at the time of the shooting. But Abrams' defense was that he killed Brownlee in self-defense, and some evidence to this effect was introduced. Upon this basis, a considerable amount of evidence had been introduced by the defense to show that Brownlee was intoxicated at the time of the shooting, and that when he was in that condition he was habitually boisterous, quarrelsome and dangerous. The prosecution had a right to rebut this evidence as to conduct and disposition on Brownlee's part during such periods, by proof coming from those who knew him, and had had suitable opportunities for observing his conduct and learning his disposition when intoxicated, that he was not boisterous, quarrelsome or dangerous when in that state, and taking all the record before us, shows in regard to the testimony of this witness, it appears quite as likely that it was offered for this purpose as the other, and we must, therefore, presume that such was the case.

We have examined the instructions given to the jury by the court, and excepted to by the appellant, with a good deal of care, and feel quite sure they afford no sufficient ground for a reversal of the judgment. What is said therein as to what constitutes reasonable doubt, may be summed up as expressing the idea, that to be convinced from the facts in evidence of the appellant's guilt to a reasonable and moral certainty, was to be convinced beyond a reasonable doubt of such fact of guilt. And this we deem entirely correct and fairly intelligible. The definitions of deliberation and premeditation embodied in such instructions are of no moment in the present state of the case, as the crime of which appellant has been convicted does not involve either

as a necessary element. And the court's definition of the deliberate use of a deadly weapon, we think is certainly correct. It is as follows: "A deliberate use of a deadly weapon is an intentional use, a use that is the result of a resolution, purpose or design, formed in the mind and reflected upon and not done in self-defense. It is only necessary that it be the act of the mind when the mind has had time to act without heat or passion." The judgment of the circuit court must be affirmed.

Judgment affirmed.