LOUISA EHRGOTT VS. THE GEORGE WEBER BREWING COMPANY.

*Negotiable note. Bona fide purchaser protected. Knowledge by agent of defenses.*

One who takes a negotiable note in good faith before due in payment of a pre-existing debt and surrenders a previous security therefor, is a *bona fide* purchaser for value, and entitled to protection against defenses growing out of equities between the original parties.

Knowledge by the agent of the purchaser of such defenses uncommunicated to her, does not affect her title.

*Decided October 4, 1888.*

Louisa Ehrgott petitions to foreclose a chattel mortgage executed by The George Weber Brewing Company to secure its promissory note, dated September, 19, 1887, payable to the order of the said Louisa Ehrgott for $48,481.24.

Ehrgott v. The George Weber Brewing Company.

From the evidence, it appears that this note was given to cover an open account of $17,000, six checks amounting to $3,681.24, one note dated June 13, 1887 for $5,000, and one note dated September 16, 1887, for $22,500.

The George Weber Brewing Co., made an assignment for the benefit of its creditors, on the 19th day of September, 1887. At the time of the formation of this company, and up to the time of its assignment, George Weber was the President, William Stichtenoth, Sr., Vice-President and William Stichtenoth Jr., Secretary and Treasurer. Stichtenoth Sr., was not active in the management of the concern. William Stichtenoth Jr., was the son of William Stichtenoth Sr., now deceased, and Louisa Ehrgott is the mother-in-law of William Stichtenoth Jr.

Louisa Ehrgott became possessed of a large amount of money from the estate of her deceased husband. She intrusted Stichtenoth Jr., with the management of her affairs, and permitted him to sell and dispose of bonds, stocks and other securities, and invest the proceeds in such manner as he saw fit.

Stichtenoth Jr., loaned $17,100 of her money to the concern. This is evidenced by the book account. From time to time, as the company needed money, it was furnished by Stichtenoth Jr., with whom the company opened an account. Stichtenoth Jr., in re-

turn for the money so advanced, received six checks aggregating $3,681.24, and a note for $5,000. These checks and note, he indorsed to Mrs. Ehrgott, and it is claimed that the money so advanced to the company, was the proceeds from the sale of certain bonds belonging to Mrs. Ehrgott.

It appears that, on Nov. 2nd, 1885, Stichtenoth Sr., executed four promissory notes, one for $4,000 one for $9,000 and two for $2,000, each payable on demand to the order of himself, and indorsed and transferred these notes to Louisa Ehrgott.

On September 26th, 1885, Stichtenoth Sr., executed and delivered to Emma Bendinger, administratrix, who is the daughter of Louisa Ehrgott, his note for $6,500, payable on demand. This note was afterwards transferred to Louisa Ehrgott.

On September 23rd, 1886, Stichtenoth paid $1,000, which was indorsed as a credit on the note of $4,000. It would now appear that Louisa Ehrgott had, on September 16, 1887, notes aggregating $22,500 made by Stichtenoth Sr.

On November 2nd, 1885, Stichtenoth Sr., gave her the following paper :

CINCINNATI, November 2, 1885.

" Received from Louisa Ehrgott the following bonds : $3,000 D. & M.; $5,000 H. Co.; $5,000 E. P. Encline Pl. R. R.; $4,000 City of Cincinnati, which

I agree to invest in the George Weber Brewing Co., for her, after I have disposed of same, and give her my note of this date, when I sell the bonds and furnish her with the note or indorsement of the George Weber Brewing Co., any time she demands same from me hereafter. The interest is to be six per cent., per annum, and paid when required. The $6,500 received in cash from Louisa Ehrgott for Peter Ehrgott estate, is covered by same conditions mentioned above. Money can only be demanded on three months notice.

WM. STICHTENOTH."

On September 16, 1887, the George Weber Brewing Co., executed and delivered to Stichtenoth Sr., its promissory note, payable on demand, and thereupon he transferred and indorsed this note, to Louisa Ehrgott, and took up his individual note of $22,500. It would now appear that Louisa Ehrgott held checks and notes aggregating $48,281.24, against the George Weber Brewing Co.

On September 16, 1887, at a meeting of the board of directors of the company, a resolution was adopted directing the president and secretary to execute and deliver to Louisa Ehrgott, its note for $48,281.24, and to secure the same by chattel mortgage on the property of the company. In accordance with this resolution, on the 19th day of September, 1887, and before the deed of assignment was

filed, the company did execute and deliver to Louisa Ehrgott, its note for that amount, and also its mortgage securing the same, which mortgage was duly filed.

The note, now being due and unpaid, it is sought to foreclose the mortgage securing the same. This is resisted by creditors of the George Weber Brewing Co., who maintain that the note is without consideration, and with the mortgage is fraudulent and void.

*Lawrence Maxwell, Jr.*, for Louisa Ehrgott.

*C. K. Shunk and John W. Herron*, for creditors.

GOEBEL, J.

We had no difficulty in coming to the conclusion that, as to the book account of $17,100, the checks amounting to $3,681.24 and the note of June 13th, 1887, for $5,000, were *bona fide* transactions; that the money of Louisa Ehrgott went into the concern, and that the company, on the 19th day of September, 1887, was indebted to her in the amounts mentioned.

This leaves for consideration, the claim of $22,500. It must be remembered that this was an individual debt of Stichtenoth Sr. Although it is claimed that he loaned that amount of money to this company, whether he did this on his own behalf, or on behalf of Louisa Ehrgott, or whether he loaned this money

at all to the company, appears to be in doubt. We do not think, however, that that is important, in the determination of the question presented.

From the books of the company, it appears that Stichtenoth Sr., on the 16th day of September, 1887, had a credit of $33,701.27. But it is claimed that this credit was false and fraudulent; that if a true and correct account had been kept, and Stichtenoth Sr., charged with moneys received from certain policies of insurance, he would not have had a credit, but would have been indebted to the company; and, therefore, there was no consideration for the giving of the note ($22,500), by the company to Stichtenoth Sr.

It is also claimed that Stichtenoth Jr., being the agent of Louisa Ehrgott, knew of this fraudulent credit, which would preclude the possibility of her being a *bona fide* indorsee for value, and we are asked to hold that his knowledge would be her knowledge.

We are satisfied that some of the entries, relating to this credit, were false and fradulent, conceived and carried out by Stichtenoth Jr., for the purpose of cheating and defrauding this company, but we are not prepared to say, from the testimony before us, that the account was incorrect to such an extent, as to preclude the possibility of there not being an indebtedness in favor of Stichtenoth Sr., against the company, to the extent of $22,500.

As to the amounts received from the insurance companies, the evidence is that the drafts were not received by Stichtenoth Sr., until the evening of the 16th of September, after the note had been transferred and assigned to Louisa Ehrgott. But, were the evidence conclusive, that Stichtenoth Sr., was not entitled to this credit, we do not think it would follow that Stichtenoth Jr.'s knowledge of the fraudulent character of the account was her knowledge.

In the case of *Bassett vs. Avery*, 15 O. S. 299, the court held that the sending by a party, before purchasing a negotiable note, to the makers for information respecting its validity, does not authorize a declaration given in response to such inquiry, and not communicated to the purchaser, to be given in evidence, to charge him with notice that the note was without consideration, or obtained by fraud; that notice of defenses to a negotiable instrument, does not affect an indorsee in no way responsible for the wrong in obtaining or putting the instrument in circulation, and whose title is derived from the party who holds it discharged of such infirmities.

It has also been held, that if a note is discounted by a bank, the mere fact that one of the directors knew of the fraud or illegality, will not prevent the bank from recovering: *National Security Bank vs. Cushman*, 121 Mass. 490. *Washington Bank vs. Lewis*, 22 Pick (Mass) 24. *Commercial Bank vs. Cun-*

*ningham*, 24 Id. 270. *Housatonic Bank vs. Martin*, 1 Met. (Mass) 294.

It is no defense for a surety upon a promissory note, against a holder for value, that he signed and delivered it to his principal, with the condition and agreement that it should not be used until another surety should be obtained, and that it was put in circulation without a compliance with this condition, unless knowledge of such condition and agreement be communicated to the holder, before he receives the note. *Dixon vs. Dixon*, 31 Vt. 450.

In cases of agency, notice to the agent, in the course of the transaction, in which he is acting for the principal, of facts affecting the nature and character of the transaction is constructive notice to the principal.

Louisa Ehrgott received the note directly from Stichtenoth Sr., and surrendered to him his individual notes. The evidence does not connect Stichtenoth Jr., with this transaction, hence the rule cannot be applied. It would seem, that unless she had knowledge of the fraud, she would be an indorsee in good faith, and there appears nothing in the evidence, even tending to show that Stichtenoth Jr., communicated to her or that she had any knowledge of the frauds he had perpetrated. Nor does it appear that Stichtenoth Sr., had any knowledge of such fraud. Under the agreement of November 2,

1887, she was entitled to the note or indorsement of the George Weber Brewing Co.

Now, let us assume that the note of September 19, 1887, was a collateral. We would hold that the execution and delivery of this note was not without consideration, and is protected from all infirmities.

In the case of *Roxborough vs. Messick*, 6 O. S. 448, it was held, that when a debt is created without any stipulation for further security, and the debtor afterwards, without any obligation to do so, voluntarily transfers a negotiable instrument to secure the pre-existing debt, and both parties are left, in respect to the pre-existing debt, in *statu quo*, he is not a holder of a collateral for value, in the usual course of trade, and receives it subject to all the equities existing against it at the time of the transfer. The converse of this proposition, must be equally true, that if there was a stipulation for further security and an obligation to do so, such holder received it free from all equities existing against it at the time of the transfer.

On the whole, Louisa Ehrgott having taken this note in good faith before due, in the usual course of business and in payment of a pre-existing debt, and having surrendered her previous security therefor, she is a *bona fide* purchaser for value, and within the rule entitling her to protection against defenses growing out of equities between the original parties.

*Stevens vs. Campbell,* 13 Wis. 375. *White vs. Springfield Bank,* 3 Sandf. (N. Y.) 222. *Corpuli vs. Page,* 10 N. C. 853. *Carlisle vs. Wishart,* 11 O. 172. *First National Bank vs. Fowler,* 36 O. S. 524. *Pitts vs. Foglesong,* 37 O. S. 676.

It must follow that Louisa Ehrgott is entitled to a judgment against the George Weber Brewing Co., in the sum of $48,481.24, with interest from September 19th, 1887, and a foreclosure of her mortgage.