Argued November 4, decided November 24, 1908.

### STATE *v.* DEAL.

[98 Pac. 165.]

WITNESSES—IMPEACHMENT—CONVICTION OF CRIME.

1. Under Section 1400, B. & C. Comp., permitting an accused to be a witness in his own behalf, and Sections 852 and 859, permitting a witness to be impeached by showing his conviction of crime, accused, as witness in his own behalf, may be impeached by showing a prior conviction.

WITNESSES—ACCUSED AS WITNESS—CROSS-EXAMINATION—EXTENT.

2. Though under Section 1400, B. & C. Comp., giving the prosecution the right to cross-examine an accused upon all facts to which he has testified regarding his conviction or acquittal, an accused testifying in his own behalf waives the constitutional guaranty under Article I, § 11, of the Constitution of Oregon, that an accused may not be compelled to testify against himself; but the prosecution may not cross-examine him as to matters not germane to and connected with his testimony in chief.

WITNESSES—ACCUSED AS WITNESS—CROSS-EXAMINATION—IMPEACHMENT.

3. Under Section 1400, B. & C. Comp., giving the prosecution the right to cross-examine an accused, testifying in his own behalf, upon all matters to which he has testified regarding his conviction or acquittal, an accused, in a prosecution for horse theft, who claims to own the horse, may be discredited by showing that he attempted to induce a witness to testify as to such ownership as of his own knowledge, when in fact he had no knowledge.

INSTRUCTIONS—TECHNICAL ERROR IN.

4. An instruction as first given, which was technically incorrect as to the presumption of innocence of defendant, may be cured and corrected by a subsequent instruction.

From Umatilla: HENRY J. BEAN, Judge.

Statement by MR. CHIEF JUSTICE BEAN.

The defendant, R. W. Deal, was tried and convicted of the larceny of a gelding, the property of E. L. Halley.

The evidence for the prosecution tended to show: That the horse in question was shipped by defendant, with other animals, from Union County to Portland in August, 1907, and was kept in Portland for a time, and then driven to Salem, where it was disposed of by defendant as his property; that it, in fact, belonged to Halley, and was lost to him in the summer of 1906 in Union County, at which time it was branded with the figure 6 on the left shoulder, but this brand had been obliterated— by the use of carbolic acid or some other like chemical— at the time the animal was taken to Portland by defendant, and the wound was still fresh; and that defendant told various parties, while in Portland, that the mother of the animal was a mare which he had with him at that place. Defendant was a witness in his own behalf; and testified, in substance, that the animal, which he drove from Portland to Salem and there sold, was not the property of Halley, but was the progeny of a mare belonging to him, known and referred to as the "diamond dot" mare by the witnesses, on account of the character of the brand, and had been in his possession since it was foaled in the summer of 1904, while the mother was running on the range; that in the spring of 1905 he took the colt and its mother from the range and kept them in certain pastures near La Grande, until he shipped the colt with his other horses to Portland, in August, 1907; that he did not say, as testified to by the witness for the State that the mare he had in Portland was its mother.

On cross-examination he was asked and required to answer, over the objection of his counsel, whether he had ever been convicted of a crime. He was also interrogated at some length concerning certain alleged conversations, between himself and one Charlie Tall, about the "diamond dot" mare, and as to whether Tall knew she had a colt while on the range in 1904, for the purpose, as the prosecution claims, of tending to show that he was endeavoring to induce or persuade Tall to

give false testimony in support of his theory of the case. Defendant denied the imputed conversation, and Tall was subsequently called by the prosecution and permitted, over defendant's objection, to contradict him.

At the close of the testimony the court, upon its own motion, charged the jury "that, independent of the evidence, all the presumptions of law are in favor of innocence, and in this case the defendant is presumed innocent until proven guilty beyond a reasonable doubt." Defendant objected to this instruction, and asked to have it modified by striking out the words "independent of the evidence," and for an instruction " that the presumption of innocence goes with defendant all through the case until the jury has found that he is guilty beyond a reasonable doubt." The court, without ruling specifically upon the matter thus suggested, said to the jury:

"Gentlemen of the jury, the court has instructed you, and now instructs you, that in this case the defendant is presumed innocent until he is proven guilty beyond a reasonable doubt." AFFIRMED.

For appellant there was a brief and oral argument by *Mr. James D. Slater*

For the State there was a brief and oral argument by *Mr. Francis S. Ivanhoe,* District Attorney.

Opinion by MR. CHIEF JUSTICE BEAN.

1. Under Sections 852 and 859, B. & C. Comp., it is proper for the purpose of impeachment to show by the examination of a witness that he has been convicted of a crime, and he is required to answer as to the fact of such conviction. *State* v. *Bacon,* 13 Or. 143 (9 Pac. 393: 57 Am. Rep. 8). A defendant in a criminal case may, at his option, testify as a witness in his own behalf (Section 1400, B. & C. Comp.), and when he does so he may be impeached as any other witness (*State* v. *Abrams,* 11 Or. 169: 8 Pac. 327) ; it is not competent to cross-examine him as to other offenses, for the purpose of humiliating

him, or raising a presumption, either of law or fact, of
his guilt of the charge under consideration (*State* v.
*Saunders,* 14 Or. 300: 12 Pac. 441) ; but, when he offers
himself as a witness in his own behalf, he may, for the
purpose of impeachment, be asked if he has been con-
victed of a crime, and be required to answer (*People* v.
*Sears,* 119 Cal. 367: 51 Pac. 325), or his conviction may
be shown by the record (*State* v. *Reyner,* 50 Or. 224:
91 Pac. 301).

2. It is claimed that the court erred in permitting
defendant to be cross-examined as to the conversations
between himself and Tall, concerning the "diamond dot"
mare, and in admitting the testimony of Tall in reference
thereto. The statute provides that a defendant, who vol-
untarily offers himself as a witness in his own behalf,
"shall be deemed to have given to the prosecution a right
to cross-examination upon all facts to which he has tes-
tified regarding his conviction or acquittal." Section 1400,
B. & C. Comp. For some time after the passage of this
law, there was much discussion as to the extent to which
the cross-examination of a defendant in criminal actions
could be pursued, but it must now be regarded as settled,
that it must be confined to matters properly germane to
and connected with his testimony in chief. *State* v.
*Bartmess,* 33 Or. 110 (54 Pac. 167) ; *State* v. *Miller,* 43
Or. 325 (74 Pac. 658). In other words, a defendant
cannot, under the guise of a cross-examination, be com-
pelled, in violation of Section 11, Article I, of the Con-
stitution of Oregon, to give evidence against himself;
but, when he becomes a witness in his own behalf, he
waives this constitutional guaranty as to all matters
properly connected with his examination in chief, and
subjects himself to such a cross-examination thereon as
may tend to explain, elucidate, or affect the credibility
of his testimony, and such cross-examination may be as
vigorous and searching as that of any other witness.
This rule was, we think, not violated in the case at bar.

3. Defendant sought to make it appear that he was the owner of the animal, which he was charged with stealing, because it was a colt of the "diamond dot" mare, and the cross-examination was for the purpose of discrediting him on this point, by showing he had endeavored to persuade or induce Tall to say that the facts in relation thereto and within his knowledge were as testified to by defendant.

4. It was also claimed that the court erred in its instruction to the jury as to the presumption of innocence, but there was no substantial error in this respect. If the instruction as first given was technically inaccurate, because of the words "independent of the evidence," the error was corrected by the subsequent instruction that the defendant was to be presumed innocent until proved guilty beyond a reasonable doubt, and the jury could not have been misled or misdirected in this phase of the case.

Judgment affirmed.                    AFFIRMED.