Argued September 14, affirmed September 22, 1914.

## STATE *v.* TORBET.

(143 Pac. 1107.)

**Criminal Law—Trial—Conduct in General.**

1. Statements of the prosecuting attorney as to the efforts made by the state to procure the attendance of a witness, and the offering of evidence of a brother of defendant that the witness in question had gone from his home with his wife, and that he did not know where his wife was, all of which were stricken out on motion of the defendant, are not grounds for reversal.

   [As to misconduct of attorneys at trial and its effect, see note in 100 Am. St. Rep. 690.]

**Criminal Law—Appeal—Prejudice.**

2. Testimony of a sheriff as to his attempt to subpoena a witness, and that he made a return that he could not find the witness, which was ruled out, is not ground for reversal.

**Criminal Law — Harmless Error — Cross-examination — Defendant in Criminal Case.**

3. Questions, on cross-examination of defendant in a criminal case, as to whether he had signed a statement, which were not answered, are not ground for reversal.

**Witnesses—Cross-examination—Defendant in Criminal Case.**

4. Under Section 1534, L. O. L., making a defendant in a criminal case a competent witness in his own behalf, and providing that he

shall be deemed to have given to the prosecution a right to cross-examine him on all facts to which he has testified, tending to his conviction or acquittal, cross-examination of a defendant, who testifies in his own behalf, as to a statement by him in writing relating to the circumstances of the crime, was proper.

[As to cross-examination of accused in criminal case, see note in 38 Am. St. Rep. 895.]

**Criminal Law—Trial—Reception of Evidence—Motions to Strike Out.**

5.  A motion to strike out evidence as incompetent, irrelevant and immaterial, and not proper cross-examination, where several of the questions were not objected to, was properly overruled.

**Criminal Law—Trial—Reception of Evidence.**

6.  The calling of defendant's brother as a witness, to show the efforts made by the state to procure the attendance of another witness, was not prejudicial to defendant, where the testimony given was stricken out.

From Multnomah: WILLIAM N. GATENS, Judge.

The defendant, Lew Torbet, was indicted for murder in the first degree.

From a conviction of murder in the second degree and sentence to imprisonment in the penitentiary for life, he appeals.                    AFFIRMED.

For appellant there was a brief over the names of *Mr. J. L. Hope* and *Messrs. Stott & Collier,* with an oral argument by *Mr. Hope.*

For the State there was a brief over the names of *Mr. Walter H. Evans,* District Attorney, and *Mr. Robert H. Maguire,* Deputy District Attorney, with an oral argument by *Mr. Maguire.*

Department 1.  MR. JUSTICE RAMSEY delivered the opinion of the court.

The defendant was indicted for the crime of murder in the first degree.  The indictment charges that the defendant, on the 26th day of April, 1912, in Multnomah County, unlawfully, feloniously, purposely and

of deliberate and premeditated malice did kill Margaret Bellaire, by shooting her with a pistol. The defendant was arraigned, and pleaded not guilty. He was tried and found guilty of murder in the second degree. On October 5, 1912, he was sentenced by the court below to imprisonment in the penitentiary for the term of his natural life. From this judgment, the defendant appeals.

The appellant's brief contains no formal assignment of errors; but several points are urged as a basis for a reversal of the judgment appealed from.

1. It seems that Gladys Bellaire was supposed to be a material witness for the state. She was absent when the case was on trial, and the prosecution desired to show that the state had used proper diligence to procure her attendance. Mr. Collier, deputy district attorney, stated to the court the following:

"May it please your Honor, there was a subpoena issued for Gladys Bellaire. She is the girl mentioned in the statement, and mentioned by Mr. Bourne as going in there a little ahead of him, where the body of the deceased lay, and I want to show to the court at this time, by proper testimony, that effort has been made to locate this girl. She is 14 years old. She was given into the custody of defendant's brother, and they lived at 420 or 470 East Yukon Street, and the deputy sheriff went there and reports there is no such number. We want to show the court and jury that we are anxious to have witnesses."

Mr. King, one of the attorneys, for the defendant, said:

"We object to the statement of counsel, and ask that it be stricken out, and that the jury be instructed to pay no attention to it."

The court then said:

"Yes; only address yourself to the court. You wish to account for the absence of the witness."

Whereupon, Mr. King, attorney for the defendant, said:

"I think I have a right to answer counsel's statement, which is somewhat of a reflection here. I want to say to your honor that from the date of the killing, and from the inquest by the coroner's jury, Gladys Bellaire was in the hands of the district attorney, and I want to refute the statement of Mr. Collier that Gladys Bellaire was ever turned over to a brother of the defendant. We are as anxious as counsel to have all the witnesses here."

The record shows that an extended discussion here occurred between counsel, and "that the lie passed between counsel several times," and that it was ended by the court's reprimanding counsel for their conduct. Then, on motion of counsel for the defendant, the court struck out all of the statements of the state's attorney, Mr. Collier. Counsel for the defendant do not appear to have excepted to any ruling or action of the court in regard to the statements made by the deputy district attorney, but they claim that the statements made by Collier were prejudicial. The state called as a witness Albert Lewis, who testified that he was a brother of the defendant, and that he lived at 540 Yukon Avenue. He further testified that his wife left home on the preceding Wednesday, and *took Gladys Bellaire with her,* and that he could not *tell where his wife was.* He was then asked whether Gladys Bellaire was in the custody of himself and wife; but counsel for the defendant objected to said question, and the court sustained the objection, and the witness was not permitted to answer. So far as the bill of exceptions discloses,

there is nothing whatever in the first point urged by the defendant for consideration, and there was no exception to any ruling of the court thereon.

2. The second exception relates to the evidence of Penumbra Kelly, a deputy sheriff, who testified concerning his attempt to subpoena Gladys Bellaire, a witness. He testified that he made a return that he could not find the witness, and the court, on the objection of counsel for the defendant, ruled that out. There is nothing in said exception.

3. The defendant was called as a witness in his own behalf, and, on cross-examination, he was asked, "And were told then that you didn't have to pay any money?" This was objected to by counsel for the defendant as not being proper cross-examination; but the record shows that this question was withdrawn, and not answered. The court did not pass on the objection. The counsel for the state then asked the two following questions:

"Now, I will ask you to read this question and answer there, and state whether or not that is your question and answer of what occurred there at Mr. Cameron's office. Is that what you said in answer to that question—that statement you signed?"

Counsel for the defendant objected to the last stated question, for the reason "that here is a large number of questions, and he is picking out one question of a large number." The court overruled the objection and allowed an exception thereto. After the court had ruled on the objection and allowed an exception thereto, the counsel for the defendant made two other objections, one of which was that it was not proper cross-examination. It is difficult to comprehend said questions, from the manner in which they are stated in the

bill of exceptions; but, from an examination of both the bill of exceptions and the report of the evidence annexed thereto and made a part thereof, it appears that no answer was given to either of those questions. Hence there is nothing to pass upon in relation thereto. It is not necessary to pass on the competency or relevancy of questions that were not answered. It is the answer to an improper question that is prejudicial to a party objecting thereto: See *State* v. *Gallo,* 18 Or. 423 (23 Pac. 264).

4. Immediately after the asking of those questions, the deputy district attorney read a portion of a statement that the defendant made in writing, in the form of questions and answers thereto, after he was arrested, a few hours after the homicide, giving his version thereof, and then asked him this question in relation to what he said in that statement, "Was that your answer at that time?" The defendant answered, "I don't remember." The attorney for the state again read from said written statement certain parts thereof, and then asked the defendant, "Were those your answers to questions that were propounded to you at that time?" The defendant answered:

"Probably those are, but I don't understand it that way. I didn't mean it in that way it was said there."

The bill of exceptions fails to show that the question last set forth *supra* was either asked or answered; but the report of the evidence annexed to the bill shows that it was asked and answered, but it fails to show that it was objected to, or that the court made any ruling in relation thereto. In the bill of exceptions, at the end of that part thereof designated as "Exception III," we find the following statement:

"Whereupon the defendant by his attorneys then and there in open court objected to said questions [in the plural number] on the ground that the same were incompetent, irrelevant and immaterial, not proper cross-examination, and upon the further motion that at the time the written statement was made the witness had no attorney to represent him, which 'motion' the court then and there denied and to which ruling of the court an exception was then and there noted."

These objections and "motion" refer to more than *one* question and they appear to have been made after the questions had been answered. No answer to said questions was made after said objections were interposed. The questions objected to have reference to a statement that the defendant made on the day that he killed Mrs. Bellaire, and after he had been arrested and taken to headquarters. They asked him many questions concerning the homicide, and he answered them. The questions and answers were taken down, and subsequently read to him, and by him subscribed. This statement contains questions asked him and his answers thereto, and it had been put in evidence by the state. When he was examined in chief, his counsel asked him concerning said statement as follows: "After you were taken to the headquarters, they questioned you, did they?" He answered, "Yes, sir." "Did you renew your request for an attorney to be present?" He answered, "I did." This questioning at the headquarters referred to by said questions is the questioning set forth in said written statement subscribed by the defendant as stated *supra,* and said questions on cross-examination set out *supra* had reference thereto.

The defendant, in his evidence in chief, gave a detailed statement of what he claimed was done when the homicide was committed by him and prior thereto, stat-

ing what he did and said, and what Mrs. Bellaire did
and said. In the statement made by him at headquar-
ters after his arrest he made a full statement of his
version of the tragedy and what led up to it; but this
statement made at headquarters differed in some re-
spects from his oral evidence given in chief, and was
less favorable to him than his oral testimony. The an-
swers made by him in said written statement related to
the same matters concerning which he testified in his
examination in chief. The questions on cross-examina-
tion set out *supra* referred to and were concerned with
the statements made by the defendant in said written
statement.

Section 1534, L. O. L., makes a defendant in a crimi-
nal case a competent witness in his own behalf. It pro-
vides that, when a defendant in a criminal action or
proceeding offers himself as a witness in his own be-
half, he shall be deemed to have given to the prose-
cution a right to cross-examine him ''upon all facts to
which he has testified, tending to his conviction or ac-
quittal.'' This statute has been construed by this
court in several cases. In *State* v. *Bartmess,* 33 Or.
110 (54 Pac. 167), the syllabus of the court in part is:

''The defendant in a criminal action who voluntarily
testifies in his own behalf may be cross-examined as
to statements made on his preliminary examination
contrary to his testimony on the trial, *although he did
not in his direct examination refer to the preliminary
examination.*''

In *State* v. *Abrams,* 11 Or. 169, 173 (8 Pac. 327, 329),
the court says in part:

''Section 166 of the Criminal Code, as amended by
the act of October 25, 1880, makes the accused in all
criminal trials and proceedings a competent witness

at his own option; and when he does avail himself of this privilege he subjects himself to the same rules of cross-examination as any other witness.''

In *State* v. *Miller,* 43 Or. 325, 330 (74 Pac. 658, 659), the court says:

''The statute [as to the cross-examination of a defendant] is not to receive *an unduly restricted or narrow* construction, and the cross-examination *must extend the inquiry to facts and matters manifestly germane and relevant to the facts testified to in chief,* tending to their explanation and elucidation,. *and in this respect may be as searching and broad as the foundation upon which it rests.''*

In *State* v. *Deal,* 52 Or. 568 (98 Pac. 165), the court says:

''It must now be regarded as settled that it [the cross-examination of a defendant] must be confined to matters properly germane to and connected with his testimony in chief. * * In other words, a defendant cannot, under the guise of cross-examination, be compelled, in violation of Article I, Section 11, of the Constitution of Oregon, to give evidence against himself; but, when he becomes a witness on his own behalf, he waives this constitutional guaranty *as to all matters properly connected with his examination in chief,* and subjects himself to such cross-examination * * *as may tend to explain, elucidate or affect the credibility of his testimony,* and such cross-examination *may be as vigorous and searching as that of any other witness.''*

In *State* v. *Lem Woon,* 57 Or. 482, 492 (107 Pac. 977), the court says:

''Thus, even if the cross-examination does make him [a defendant in a criminal case] a witness against himself, it is not objectionable on account thereof, *provided it relates to matters properly connected with his examination in chief.''*

In *People* v. *Rozelle,* 78 Cal. 92 (20 Pac. 36), constru-
ing a similar statute, the court says:

"The impression seems to prevail that the section
quoted has the effect to confine the examination of a
defendant to narrower limits than the case of any
other witness. We do not so understand it. He can
only be cross-examined as to matters about which he
was examined in chief. The rule is precisely the same
as to any other witness. So far as other witnesses
are concerned, however, the court is allowed some dis-
cretion as to the extent and scope of the cross-examina-
tion that might not be allowed in case of the defendant."

The defendant in a criminal action can be properly
cross-examined as to any facts relating to and prop-
erly connected with the facts concerning which he
testified in his examination in chief. The questions
asked the defendant, on cross-examination in this case,
and objected to, related to statements made by him
at headquarters after his arrest, and those statements
referred to what was said and done when he committed
the homicide and prior thereto. In his direct exam-
ination he testified at length as to those same facts, and
his oral evidence disagreed in some respects with what
he said when he made those statements. Hence the
cross-examination that is objected to related to the
same facts to which he testified in chief. In *State* v.
*Bartmess, supra,* the defendant was on trial on a
charge of murder. He had had a preliminary exam-
ination before a magistrate, and he testified in his own
behalf at that examination. When he was on trial in
the Circuit Court, he again testified in his own behalf,
and gave his version of the homicide and of the facts
relating thereto; but he said nothing concerning the
preliminary examination, or his testimony given there.
On cross-examination, he was asked as to statements

made by him in his evidence at the preliminary examination, and these questions were objected to as not being proper cross-examination; the claim being made that the evidence sought by said cross-examination was not germane to any testimony given by him on his direct examination. This court in that case held that the cross-examination of Bartmess was proper. Mr. Justice Moore in that case says:

"A fair construction of the statute in question leads us to conclude that defendant in a criminal action, having voluntarily testified in his own behalf, *may be cross-examined in relation to all facts* and matters *germane to the testimony given by him on his examination in chief.* \* \* But if he has made at other times statements which are inconsistent with the testimony given by him at his trial, he may be impeached by proof of such contradictory statements in the manner prescribed by statute, and the conclusion reached in *State* v. *Abrams* is adhered to in this respect."

The court held in that case that it was proper to ask Bartmess on cross-examination whether he had made certain statements at the preliminary examination that were inconsistent with his evidence in chief, although in his examination in chief he had not referred to the preliminary examination at all. In this case the defendant was asked in his examination in chief whether he had been questioned at headquarters, and he testified that he had; but he did not state what the questions asked him, or by him answered, were. We hold that the evidence sought by the cross-examination was germane to the facts to which the defendant testified in chief, and that said cross-examination was proper.

5. In what is termed "Exception IV" of the bill of exceptions, considerable matter is set forth. Several

of the questions there set out were not objected to.
At the end of the matter there stated, counsel for the
defendant moved to strike out the evidence there re-
ferred to, for the alleged reason that it was "incom-
petent, irrelevant and immaterial," and not proper
cross-examination. We find that said motion was
properly overruled, and that the questions set out
under said Exception IV were proper.

6. Under what is designated as "Exception V" of
the bill of exceptions are set out nine questions asked
of the witness Albert Lewis, and his answers to all of
them but the ninth. The first eight questions were
not objected to. The defendant objected to the ninth
question, and the court sustained this objection, and
it was not answered. The evidence referred to in this
"exception" was given to show that Gladys Bellaire,
whom the state desired as a witness, had been at the
residence of Albert Lewis, a brother of the defendant,
and that she and Lewis' wife had left Lewis' residence
a few days before the trial, and that he could not tell
where his wife was. The state had previously shown
that the sheriff had been unable to find Gladys Bel-
laire. The trial court struck out all of the evidence
of the witness Lewis on the motion of the defendant.

Counsel for the defendant contends that the calling
of the witness Lewis was an act prejudicial to the
defendant, notwithstanding the fact that the court
struck out all of his evidence. This witness testified
that he was a brother of the defendant, and that
Gladys Bellaire, who was wanted by the state as a
witness, left his house with his wife only a few days
before the trial, and that he could not tell where his
wife was. This evidence was offered by the state as
testimony tending to show that the state had used

proper diligence to procure the attendance of Gladys Bellaire as a witness.

We think that there is nothing in the matter referred to in Exception V of which the defendant has a right to complain. We have examined all the questions raised by the briefs of counsel and by the oral argument, but we have found no error prejudicial to the defendant.

We find that the defendant had a fair trial, and that the judgment of the court below should be affirmed.

The writer of this opinion feels constrained to suggest the following *dicta:* That the record in this case was not carefully prepared for the appeal. That when litigants expect to appeal a case, they should take care to object to all proceedings that they deem improper and state *specifically* their reasons for objecting, and obtain a ruling of the court thereon, and then except to such ruling. It is not proper to sit by and wait until a question has been answered, and then object thereto. A motion to strike out an answer to a question is proper when it is not responsive to the question; but, as a general rule, a motion to strike out an answer that is responsive to a question is not the proper practice. However, if evidence is given that is wholly irrelevant, the court on its own motion may strike it from the case. Counsel, by a little care, can lay the foundations properly for an appeal.

The judgment of the court below is affirmed.

Affirmed.

Mr. Justice Eakin, Mr. Justice Moore and Mr. Justice Burnett concur.