Argued October 22; decided November 11, 1895.

STATE *v.* CARR.

[42 Pac. 215.]

1. ACCOMPLICES — QUESTION FOR COURT.— Whether a witness is or is not
   an accomplice is a question for the court, where the facts in relation
   thereto are all admitted and no issue thereon is raised by the evi-
   dence; but if the evidence is conflicting as to whether a witness is
   an accomplice, that issue should be submitted to the jury under
   proper instructions.

2. WHO IS AN ACCOMPLICE — CODE, § 1371.— A mature person of ordinary
   intelligence, who knowingly offers as a bribe to a juror money pro-
   vided by another for that purpose, becomes an accomplice within the
   meaning of section 1371, Hill's Code, forbidding a conviction upon
   the uncorroborated testimony of an accomplice.

APPEAL from Multnomah: T. A. STEPHENS, Judge.

John A. Carr was convicted of the crime of of-
fering to bribe one Thomas Huntington, a juror in a

criminal action against Joseph Kelly, (*State* v. *Kelly,*
28 Or. 225,) and from the judgment upon such convic-
tion brings this appeal. The verdict was based upon
the evidence of Mrs. Huntington, the wife of the juror,
who testified, in substance, that on the morning after
her husband had been accepted as a juror the defend-
ant called at her house, and, after telling her where
the jurors boarded, asked her to go there and inter-
cede with her husband for Kelly, and told her he
would give her fifty dollars if she would do so; that
on the afternoon of the same day she called at the
restaurant, as requested by the defendant, and had a
conversation with her husband, but whether about the
case in which he was a juror or some other matter
does not appear. The next morning the defendant
called, and, when told that her husband "would have
nothing to do with the matter," said "That will end
it." A few days later, however, while the trial was
still in progress, he accosted her on the street, and
asked her, "How about that affair of Kelly's?" to
which she replied, "I don't know." About six o'clock
of the same evening, as she was going to see her hus-
band on some private business, she met the defendant,
who gave her five twenty-dollar gold pieces, and told
her to give them to her husband "to help Kelly." She
proceeded immediately on her errand, and, meeting her
husband on the steps of the courthouse, had a conver-
sation with him, during which she held the money in
her hand where he could see it. As the result of this
conversation she returned the money to the defendant
the next morning, and told him "Mr. Huntington
would have nothing to do with it." Two or three
days later she again met the defendant on the street,
and he put ten dollars in her hand, nothing being said
at the time either by the defendant or witness. This

money she retained, and gave to her husband after his
discharge from the jury, and requested him to return
it to the defendant, but he testified on the trial that he
gave it to his boy, who wanted to go fishing.    The
court below ruled — whether properly or not we shall
not stop to inquire — that under section 712, Hill's
Code, the witness could not testify as to any conversa-
tion between herself and husband, and therefore it is
not very clear from the evidence that she ever com-
plied with the request of the defendant by offering to
her husband the money in question to influence his
verdict, but we shall assume, for the purposes of this
opinion, that she did.    This is, in substance, all the
evidence upon which the state relied for a conviction.
At the close of the testimony the defendant moved the
court to direct a verdict of not guilty, on the ground
that Mrs. Huntington was an accomplice, and therefore
no conviction could be had upon her uncorroborated
testimony.    The motion was overruled, and the court
submitted the question as to whether she was an ac-
complice to the jury for their determination, and this
ruling is the principal error relied upon for a reversal
of the judgment.                                   REVERSED.

For appellant there was a brief by *Messrs. Durham,
Platt and Platt, Williams and Williams,* and *Dolph, Nixon and
Dolph,* with oral arguments by *Messrs. George H. Durham,
Joseph N. Dolph,* and *Richard Williams.*

For the state there was an oral argument by *Mr.
Wilson T. Hume,* district attorney, and a brief by *Mr.
Hume* and *Mr. Cicero M. Idleman,* attorney-general, to this
effect.

Wharton on Criminal Evidence, § 440, says "An ac-
complice is a person who knowingly, voluntarily, and

with common intent with the principal offender unites in the commission of the crime." This definition is approved by this court in *State* v. *Roberts,* 15 Or. 197, and we take it is the law of this state on the subject: 1 Bishop on Criminal Procedure, § 1159. Judged by this rule Mrs. Huntington was not an accomplice with Carr; even appellant's counsel makes her an accomplice solely by presumptions of knowledge and intent on her part.

An innocent elderly lady unacquainted with courts or law or legal rights, customs, or duties is approached by a crafty, designing man with a proposition to submit to her husband and she does so and then reports to this man that her husband would have nothing to do with his villainous schemes. She is still pursued by the man placing in her hand the money with a request to give it to her husband a few minutes before she meets her husband and she again communicates to her husband what has taken place, and this man who is gray in sin, a crafty man of the world, engaged knowingly in trying to save the neck of a murderer by corrupting the jury, asks this court, as he asked the trial court, to say that the lady is a person who knowingly, voluntarily, and with a common intent united with him in the commission of the crime. The mere statement of the proposition, in connection with the evidence in this case, the character of the lady, her appearance and conduct on the witness stand, ought to be sufficient answer to appellant's claim, and satisfy this court of the correctness of the ruling of the trial court. We do not dispute the proposition that if Mrs. Huntington is an accomplice that the defendant is entitled to be discharged; we contend simply that she was an innocent agent. The question as to whether Mrs. Huntington was or was not an ac-

complice was submitted to the jury as a question of
fact to be decided by them, with proper instructions
of the court to acquit the defendant if they found her
to be an accomplice. We think the court committed
no error in submitting this question to the jury. The
rulings and instructions of the court were evidently
made upon the theory that it was the province of the
jury to determine from the evidence whether Mrs.
Huntington was an accomplice with Carr or was
simply an instrument in his hands, a mouthpiece
through which Carr reached the ear of Huntington,
and the determination of that question by this court
determines all the questions presented by the excep-
tions of the appellant to the rulings and instructions
of the court. The cases cited by appellant to sustain
his contention are cases where the witness was an ad-
mitted accomplice and the errors of the trial courts
consisted in not correctly instructing the jury on the
law affecting corroboration of accomplices' testimony.
In this case the state contended and the jury found
that Mrs. Huntington was not an accomplice and the
evidence in the case sustains the contention.

Opinion by MR. CHIEF JUSTICE BEAN.

1. At common law juries might convict upon the
testimony of an accomplice alone, if it carried convic-
tion to their minds, although it was deemed so unre-
liable that the courts generally advised them not to
do so unless it was corroborated by other evidence.
But the credit to be given to the testimony of such
a witness, and the corroboration necessary to render
it satisfactory, were matters to be considered and de-
termined by the jury, and, if they were fully convinced
thereby, the conviction was legal, though without other
28 OR.—28.

support than the testimony of an accomplice. But in this state the rule has been so changed by statute that the uncorroborated testimony of an accomplice, however satisfactory to a jury, is insufficient to convict. Section 1371 of Hill's Code provides that ''A conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime, and the corroboration is not sufficient if it merely show the commission of the crime or the circumstances of the commission.'' This statute absolutely prohibits a conviction in a criminal case upon the uncorroborated testimony of an accomplice, even although the jury may believe such testimony to be entirely true, and that it establishes the defendant's guilt beyond a reasonable doubt. It proceeds upon the theory that experience in the administration of the criminal law has shown the sources of such testimony to be generally so corrupt as to render it unworthy of belief, and that it is therefore better as a matter of public policy to forbid a conviction on the uncorroborated testimony of an accomplice, although the guilty may thereby sometimes escape punishment, than to leave it possible for the conviction of an innocent person on such testimony. Whether this rule of law is wise or unwise is not for us to inquire. It is so written, and must be applied by the court. As said by the late Mr. Justice STRAHAN, in his opinion in the case of *State* v. *Jarvis,* 18 Or. 364, (23 Pac. 251,) ''the statute has made corroboration of an accomplice necessary, so that the court has no control over the subject except to apply the statute. The court has no discretion, but is bound to apply the statute, indiscriminately, to all cases wherever an accomplice appears as a witness, and the

state's case depends solely upon his uncorroborated
testimony. If we were now engaged in making the
law, no doubt we would declare a different rule; but
the principle is already established and fixed by the
authorities, and we could only add to the uncertainty
of the law by disregarding them,—a thing which we
have no right to do. This point plainly marks the
distinction between legislative and judicial power
* * *. The legislature might have declared an ac-
complice incompetent as a witness; but he may be a
witness, and the legislature has not said that he shall
not be believed if uncorroborated, but that a convic-
tion shall not be had upon his testimony unless there
is other evidence tending to prove the defendant's
complicity in the offense charged." Now, in the case
at bar, it is conceded by the state that there was no
testimony whatever given on the trial tending in any
way to connect the defendant with the commission of
the crime charged, except that of Mrs. Huntington, and
her testimony is wholly uncorroborated. If, then, she
was an accomplice, within the meaning of the statute,
it is plain the evidence was insufficient to convict,
however clearly it may have shown the defendant's
guilt. The legislature, in its wisdom, has declared
that no person shall be convicted of a crime in this
state upon the uncorroborated testimony of an accom-
plice, and upon it and not the courts must rest the
responsibility for the consequences. The contention
for the defendant is that the trial court should have
ruled, as a matter of law, that the witness was an ac-
complice, and directed an acquittal; while the state
claims the question was properly submitted to the jury
for their determination. We understand the rule to
be that where there is any conflict in the testimony
as to whether a witness is or is not an accomplice,

the issue must be submitted to the jury under proper instructions of the court, but where the facts are all admitted and no issue thereon is raised by the evidence, it then becomes a question of law for the court as to the effect of the uncontradicted testimony: *State v. Roberts,* 15 Or. 187 (13 Pac. 896); *State v. Light,* 17 Or. 358 (21 Pac. 132); *State v. Jarvis,* 18 Or. 360 (23 Pac. 251); *Armstrong v. State,* 33 Texas Crim. Rep. 417 (26 S. W. 829); *Williams v. State,* 33 Texas Crim. Rep. 128 (47 Am. St. Rep. 21, 25 S. W. 629). Here there was no conflict in the evidence or issue raised thereby as to the capacity or knowledge of Mrs. Huntington, or the part she took in the commission of the crime. Her connection therewith and what she did was admitted, so that the question presented was purely one of law, and not of fact, and the court erred in submitting it to the jury.

2. And it seems to us there can be no escape from the conclusion that on this record Mrs. Huntington was an accomplice of the defendant. Under all the authorities one who, being of mature years and in possession of his ordinary faculties, knowingly and voluntarily coöperates with or aids and assists another in the commission of a crime is an accomplice, without regard to the degree of his guilt: 1 Russell on Crimes, 49; Wharton on Criminal Evidence, § 440; Rice on Criminal Evidence, § 319; Bishop on Criminal Procedure, § 1159; *Cross v. People,* 47 Ill. 152 (95 Am. Dec. 474). The term is generally used in discussions involving the admissibility or weight to be given to the testimony of one *particeps criminis* against his fellow. In such case the grade of guilt is ordinarily unimportant, and therefore an accomplice is an appropriate term because it implies nothing as to grade. It is so

used in the statute. It is claimed that the case was properly submitted to the jury on the theory that Mrs. Huntington may have been an innocent agent of the defendant, and therefore not an accomplice, but there was no issue of that kind made by the testimony. An innocent agent in this sense is one who does an unlawful act at the solicitation or request of another, but who, from defect of understanding or ignorance of the inculpatory facts, incurs no legal guilt: Bishop on Criminal Law, § 310. Mrs. Huntington was clearly not an agent of this kind. She was a woman of mature years, in full possession of her faculties, and, from aught that appears, of ordinary intelligence. She knew the money was handed to her by the defendant to be given her husband "to help Kelly," and what part she was expected to take in the affair. With full knowledge of the purpose to be accomplished, and the use to be made of the money, she freely and voluntarily undertook to and did aid and assist in the matter by offering the money to her husband to corruptly influence his verdict. It may be true that she was induced by the promise of some pecuniary reward to herself to participate in the scheme without fully realizing the enormity of the offense; but she must have known she was doing wrong, or at least cannot plead ignorance of the law as an excuse for her conduct. She knew, or is conclusively chargeable with knowledge, that the transaction in which she was engaged was a crime, and that her coöperation was necessary to its commission. Without her active coöperation it could not have been committed, because she was the only means of communication between the defendant and her husband. No offer to bribe him was made except through her, and, under these circumstances, if

she was not an accomplice the crime charged was not committed. The submission to the jury of the question as to whether Mrs. Huntington was an accomplice was equivalent to allowing them to decide in effect whether the statute should be enforced or suspended as in their judgment would best promote the ends of justice, and, in view of the section above quoted, was an evasion of a duty incumbent upon the court. The statute is binding both on courts and juries, and its provisions cannot be evaded, however wholesome the result might be in a particular case, by submitting to a jury the question as to whether a witness is an accomplice, when no such issue of fact is raised by the testimony. From these conclusions it follows that we have no alternative under the law but to reverse the judgment, and it is so ordered.          REVERSED.