Argued September 2, decided November 20, 1913,

## STATE v. McALLISTER.

(136 Pac. 354.)

**Sodomy—Indictment—Sufficiency.**

1. Section 1439, L. O. L., provides that the manner of stating the act constituting the crime as stated in the appendix to the Criminal Code is sufficient, where the forms are applicable, and in other cases forms may be used as nearly similar as the nature of the case permits. The form of indictment given on page 1011 for charging rape is that defendant "forcibly ravished C. D., a woman of the age of 14 years." The indictment alleged that accused did unlawfully "commit the crime against nature in, upon, and with one R. K., then and there being a male person; said crime against nature being too well understood and too disgusting to be herein more fully set forth."

*Held,* that the indictment was sufficient under the code, though it would not be sufficient at common law.

**Criminal Law—Evidence—Other Offenses.**

2. In a prosecution for committing the crime against nature with a male person, evidence that accused had committed the same offense with others than the person named in the indictment was not admissible.

[As to the admissibility in criminal prosecutions of evidence of other offenses, see note in 105 Am. St. Rep. 976.]

**Courts—Stare Decisis.**

3. The doctrine of *stare decisis* should not be departed from, unless it appears, on subsequent examination of the question, that the former case was decided contrary to sound principle.

[As to the doctrine of *stare decisis,* see notes in 27 Am. Dec. 628; 73 Am. St. Rep. 98.]

**Criminal Law—Trial—Instructions—Comment on Facts.**

4. Section 139, L. O. L., provides that in charging the jury the court shall state all matters of law which it thinks necessary for the jury's information, but shall not present the facts of the case. In a prosecution for the crime against nature the court stated that: "The court thinks that a man with normal sexual instincts is incapable of committing the crime, and that it is only a person of abnormal sexual sense that is capable of committing it. So if you are satisfied that one was possessed of this unnatural or abnormal sexual sense, you might infer that he had a motive." *Held,* that the instruction was prejudicial error as being an expression of the court's individual opinion on a matter of fact.

**Criminal Law—Province of Jury.**

5. The court should not express an opinion on any fact in the case in charging the jury; it being for the jury to determine what the facts are.

**Criminal Law—Quashing Indictment—Time of Motion—Motion in Supreme Court.**

6. A motion to quash the indictment and discharge accused should be filed in the trial court, and may not be made in the Supreme Court, Section 1625, L. O. L., providing that the judgment appealed from can be reviewed only as to questions of law appearing upon the transcript, and Supreme Court rule 4 (56 Or. 615, 117 Pac. ix), requiring the appellant to set out in full in his first briefs the errors alleged.

From Multnomah: JOHN P. KAVANAUGH, Judge.

En Banc.    Statement by MR. JUSTICE RAMSEY.

The defendant, E. S. J. McAllister, was convicted of the crime against nature and from the sentence imposed he appeals.                          REVERSED.

For appellant there was a brief and an oral argument by *Mr. Robert J. Slater.*

For the State there was a brief over the names of *Mr. Walter H. Evans,* District Attorney, *Mr. Robert F. McGuire,* Deputy District Attorney, and *Mr. Frank Collier.*

MR. JUSTICE RAMSEY delivered the opinion of the court.

1. The defendant demurred to the indictment, alleging that it does not substantially conform to the requirements of Chapter 7 of Title 8 of Lord's Oregon Laws, in that it does not contain such specifications of the crime attempted to be charged and the particular circumstances thereof as required by said provisions, and that the facts stated do not constitute a crime.

The charging part of the indictment is in the following words: "The said E. S. J. McAllister, on the 28th day of October, 1912, in the county of Multnomah and the State of Oregon, then and there being, did, then and there, unlawfully and feloniously commit the crime against nature in, upon and with one Roy Kadel, he, the said Roy Kadel, then and there being a male person; said crime against nature being too well understood and too disgusting to be herein more fully set forth," etc.

Subdivision 6 of Section 1448, L. O. L., requires the act charged as the crime to be clearly and distinctly set forth, in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended.

All *forms* of common-law pleadings in criminal actions were abolished by Section 1435, L. O. L.

Section 1439, L. O. L., provides that the manner of stating the act constituting the crime, as set forth in the appendix to the Criminal Code, is sufficient in all

cases where the forms there given are applicable, and said section further provides that "in other cases, forms may be used as nearly similar as the nature of the case will permit."

The forms given in the appendix of the Criminal Code are very brief and use no surplus words, and, in cases where no forms are given, the pleader is authorized to follow the models given as nearly as the nature of the case will permit. No form is set forth for the crime against nature, but a form for rape is set forth on page 1011, L. O. L. Where the person upon whom the rape is committed is above the age of consent, the charging words are that the defendant "forcibly ravished C. D., a woman of the age of 14 years." It is not necessary to allege that the defendant "carnally knew" the person ravished. The crime against nature is much like rape as to the manner of its commission.

In the case of *Commonwealth* v. *Dill,* 160 Mass. 536 (36 N. E. 472)—a sodomy case—the indictment charged that the defendant did "unlawfully and feloniously commit a certain unnatural and lascivious act," with a person therein named. The Massachusetts statute provided that it should not be necessary to allege a description of the crime in the indictment. Passing upon the sufficiency of the indictment, the court said: "We think the indictment good without reference to Section 2 of the statute. Before the statute, sodomy had long been known as a crime against nature."

In *People* v. *Williams,* 56 Cal. 647, an information for an attempt to commit the crime against nature, charged that the defendant "did willfully and unlawfully and feloniously make an assault on H. G., with intent to commit in and upon the person of H. G., the infamous crime against nature," etc. The court held it sufficient, saying: "We have examined the information in this case and consider it good. The acts constituting the offense are stated in ordinary and concise

language, and in such a manner as to enable a person of common understanding to know what is intended; * * every person of ordinary intelligence understands what the crime against nature with a human being is.''

In McClain's Criminal Laws, Volume 2, Section 1154, the author says: ''An indictment which charges that the defendant did unlawfully and feloniously commit a certain unnatural and lascivious act with a person named, or did feloniously, etc., commit the infamous crime against nature with, etc., is sufficient.'' We hold that the indictment is sufficient, although it would be insufficient at common law. The demurrer was properly overruled.

2. On the trial, in the court below, several witnesses were permitted, over the objections of the defendant, to give evidence tending to prove that the defendant had committed, with persons other than the person named in the indictment, the crime against nature. The case of *State* v. *Start,* 65 Or. 178 (132 Pac. 512), is a case in which the defendant was charged with the crime against nature, committed with another man. In that case the trial court had permitted to be given in evidence testimony tending to prove that the defendant had committed the crime against nature with other persons. It was held in that case, by a majority of the court, that such evidence was not admissible. In that case the opinion of the majority of the court was written by Mr. Justice BURNETT, and concurred in by Mr. Justice MOORE and Mr. Justice BEAN. The opinion of the minority was written by Mr. Chief Justice McBRIDE and concurred in by Mr. Justice EAKIN. Those opinions examined, with thoroughness and ability, the question as to the admissibility of evidence tending to prove that the defendant had committed the crime against nature with persons other than the one named in the indictment, and the majority of the court held that such evidence was not admissible, while the opinion of the

minority came to the opposite conclusion. We do not deem it necessary to re-examine that question in this case. We hold that the rule declared in that case by a majority of the court should be followed.

In *Giblin* v. *Jordan,* 6 Cal. 418, the court says: "This case may be a hard one; but it forms no reason why the former decisions should be disregarded. The frequent instances in which courts have relaxed rules to avoid the consequences of cases like this have done more to confuse and complicate the law * * than all other cases put together. A rule once established and firmly adhered to may work apparent hardship in a few cases, but in the end will have been more beneficial than if constantly deviated from."

In *Hogatt* v. *Bingaman,* 7 How. (Miss.) 569, the court says: "It should require very controlling considerations to induce any court to break down a former decision and *lay again the foundations of the law.*"

In his work on Bailments, Sir William Jones, commenting on the maxim "that nothing is law that is not reason," says: "This is a maxim in theory excellent, in practice dangerous; as many rules, true in the abstract, are false in the concrete. For, since the reason of Titius may, and frequently does, differ from the reasoning of Septimins, no man who is not a lawyer would ever know how to advise, unless courts were bound by authority as firmly as pagan deities were supposed to be bound by the decrees of fate."

In *Grignon's Lessee* v. *Astor,* 2 How. (U. S.) 343 (11 L. Ed. 283), the court says: "We do not deem it necessary now, or hereafter, to retrace the reasons or the authorities on which the decisions of this court in that or the other cases which preceded it rested. They are founded on the oldest and the most sacred of the principles of the common law; time has consecrated them; the courts of the states have followed, and this court has never departed from, them."

In *Sydnor* v. *Gascoigne,* 11 Tex. 455, the court says:
"The rule of *stare decisis,* so far as it applies to de-
cisions of our own court, should not be disregarded but
on the fullest conviction that the law had been settled
wrong; and, even then, we should pause and consider
how far the reversal would affect transactions entered
into and acted upon, under the law of this court."

In Wells on Res Adjudicata and Stare Decisis, Sec-
tion 596, the author says: "Hence, when once a prin-
ciple has been fully recognized, it should not be
changed, except it is found to be unbearably wrong,
or else it is changed or abrogated by the legislature,
to whom the correction of errors ought usually to be
left as to long-established principles, acted upon as a
rule of property."

3. In *State* v. *Clark,* 9 Or. 470, the court says:
"*Stare decisis* is the policy of the courts, and the prin-
ciple upon which rests the authority of judicial deci-
sions as precedents in subsequent litigation, and this
doctrine ought not to be departed from, except when
subsequent examination shows *the case to have been
decided contrary to principle*": See, also, *Multnomah
County* v. *Sliker,* 10 Or. 65; *Despain* v. *Crow,* 14 Or.
404 (12 Pac. 806).

We believe that the rule stated in *State* v. *Clark,*
9 Or. 470, is the correct one, and that a doctrine de-
clared by a former decision of this court should not
be overruled or departed from, unless the court is sat-
isfied upon subsequent examination of the question
that the former case was decided contrary to sound
principle.

The case of *State* v. *Start,* 65 Or. 178 (132 Pac. 512),
was thoroughly considered, and it is directly in point on
this question, and a majority of the court find nothing
therein contrary to sound principle, and we follow that
case, holding, that all evidence received by the court
tending to prove that the defendant had committed

the crime against nature with persons other than Roy Kadel (the person named in the indictment) was incompetent and irrelevant, and that its admission was error.

4. The court below gave this instruction to the jury: "The court thinks that a man with normal sexual instincts is incapable of committing the crime, and that it is only a person *of abnormal sexual sense that is capable of committing it. So if you were satisfied that one was possessed of this unnatural or abnormal sexual sense, you might infer that he had a motive, a reason or a force, impelling him to do such an act,"* etc.

Section 139, L. O. L., provides: "In charging the jury, the court shall state to them *all matters of law* which it thinks necessary for their information in giving their verdict, *but it shall not present the facts of the case,"* etc.    The opinion of the court stated in the foregoing charge may or may not be true as a fact.    It certainly is not *a matter of law.*    The court has no right to state facts to the jury, unless they are of such a nature that the court can properly take judicial notice of them.

The case of *Keen v. Keen,* 49 Or. 366 (90 Pac. 149, 14 Ann. Cas. 45, 10 L. R. A. (N. S.) 504), was an action by a wife against another woman for damages for alienating her husband's affection, and at the trial the judge inadvertently, passing upon an objection to a question, made the following remarks, in the presence of the jury: "I don't think it makes any difference in this case. The charge is that she seduced him. My experience has been, my observation has been, that a woman is not liable to be seduced without she contributes a little in some way to the general purposes of the case." There the judge stated the result of his observation in the hearing of the jury, and not as a part of his charge, and it was held to be error. Passing upon the matter the court says: "Our statute com-

mands that, in charging the jury, the court shall not present the facts of the case, but shall inform the jury that they are the exclusive judges of all questions of fact. * * The remark complained of was, in ou opinion, a violation of the provision last named, and, believing that it was not expressly withdrawn, it is impossible to say what the effect of such language was on the minds of the triers of fact, and hence the judgment is reversed and a new trial ordered."

Thompson, in his work on Charging the Jury, pages 79, 80, says: "Juries—particularly ignorant juries—watch with great eagerness any expression of opinion from the bench, and are very apt to follow it, whether it falls from the lips of the judge as a casual remark. * * Still less will the law permit an expression of his own opinion of the facts of the case, based, not upon the evidence, but upon his own knowledge."

5. Our statute is express that the court "shall not present the facts of the case," but shall state to the jury "all matters of law which it thinks necessary for their information" in rendering a verdict. It is the province of the jury to determine what the facts are in any case, and the court has no right to express an opinion on any fact in a case, when charging the jury. Mr. Chief Justice KELLY, in the case of *State* v. *Whitney,* 7 Or. 390, says: "It is the exclusive province of the jury to determine questions of fact. They, and they only, have the right to judge of the credibility of witnesses, and of the weight and effect of their testimony. It has always been held to be an erroneous instruction when the court assumed any controverted facts to be proven, instead of submitting to the jury the question whether or not it has been established by the testimony before them."

In this case the trial judge told the jury that he thought a man with normal sexual instincts was not

*capable* of committing the crime charged, and that only a person of abnormal sexual sense *is capable* of committing such an offense. The court then added that if the jury were satisfied that one was possessed of this unnatural or abnormal sexual sense, they might *infer that he had a motive, a reason, or a force impelling him to do such an act.* The court practically assumed the position of an expert witness, and gave the jury *his opinion* concerning the kind of person *who could* and the kind of *one who could not* commit the crime against nature. This was prejudicial error.

We do not find it necessary to examine the other points made on the appeal.

6. Counsel for the defendant filed in this court, at the time of the argument, a motion for an order of this court quashing the indictment, and discharging the defendant, but we think that such a motion should be filed in the court below, and not here. Section 1625, L. O. L., provides that upon an appeal, the judgment or order appealed from *can be reviewed only* as to the questions of law *appearing upon the transcript.* Rule 4 of this court (56 Or. 615, 117 Pac. ix) is as follows: "In criminal causes, the appellant shall set out in full, in his first brief, the errors alleged." The appellant's first brief does not mention the point made by said motion. Possibly this court in criminal causes is authorized to pass upon the questions only that arise upon the transcript, and are assigned as errors in the appellant's first brief. However, we do not decide that point. The defendant can properly present to the court below the matter urged in his said motion to quash the indictment.

For the errors referred to, the judgment of the court below is reversed and a new trial granted, and the cause is remanded to the court below.        REVERSED.

MR. JUSTICE McNARY delivered the following dissenting opinion.

At the doorway of a consideration of this case, we are confronted by a motion of counsel for defendant to dismiss the appeal and quash the indictment for the reason that Section 2099, L. O. L., under which the indictment was drawn, has been repealed and substituted by an act of the legislature approved January 31, 1913. The crime with which defendant is charged was committed during the month of October, 1912. The grand jury returned the indictment December 2, 1912. On February 24, 1913, the trial jury found defendant guilty. The day following judgment was entered. On February 25, 1913, the notice of appeal and undertaking were filed.

Section 2099, L. O. L., which was the law extant at the time of the commission of the crime, reads as follows: ''If any person shall commit sodomy or the crime against nature, either with mankind or beast, such person, upon conviction thereof shall be punished by imprisonment in the penitentiary not less than one year nor more than five years.'' By legislative enactment this section was amended in 1913, becoming effective June 4th of that year, so as to read: ''If any person shall commit sodomy or the crime against nature, or any act or practice of sexual perversity, either with mankind or beast, or sustain osculatory relations with the private parts of any man, woman or child, or permit such relations to be sustained with his or her private parts, such person shall upon conviction thereof, be punished by imprisonment in the penitentiary not less than one year nor more than fifteen years'': Laws 1913, p. 56. From a time antedating the formation of this government the enactment of laws which impose a punishment for acts which were not punishable when committed have been prohibited, and, from a time equally

remote a statute increasing the punishment of offenses which were committed before its enactment have been inhibited. So vitally are those principles associated with civil government that they are to be found in the federal Constitution and in the constitutions of the several states of the Union. Defendant occupies no position coming within those sacred rules, and therefore cannot beckon them to his aid. The amendatory act is without this case, as the defendant was indicted, tried, convicted and sentenced under the criminal section of the statute existing at the time the crime was committed. The status of the defendant will not be altered in the least by the change in the statute, and nothing remains to be done but the execution of the judgment.

The trial court is accused of committing error when it advised the jury that Harry Work was not an accomplice of Roy Kadel in the commission of the crime alleged in the indictment. The jurors were told that Roy Kadel was an accomplice of defendant, and that a conviction could not be had upon the uncorroborated testimony of an accomplice, but that his testimony must be supported by some evidence tending to connect defendant with the commission of the offense. The testimony of the witness Harry Work is undisputed, and, in narrative form, is that he met Roy Kadel on one of the busy thoroughfares of Portland, and accompanied him unwittingly to the office of the defendant, where both remained in the reception-room until Kadel was beckoned by defendant to enter his private office; that, growing impatient at the failure of Kadel to return, Work stepped into the hall and knocked on the door leading into defendant's private office, whereupon defendant opened the door and Work entered and saw Kadel wiping his penis with a handkerchief; that Work ejaculated, "Hello, what is this?" and Kadel replied, "McAllister and I are having a little trade," which, in

the parlance of the morally depraved, means the performance of the act defined in the indictment; that Work further stated: "Well, I'm in a hurry; I am going back to the hotel"—and defendant remarked, "All right, boys, I'll see you again"; thereat Work and Kadel stepped into the hallway and were gone. The record discloses that this was the only visitation these two boys ever made to McAllister's office in each other's company. This court in *State* v. *Carr,* 28 Or. 389 (42 Pac. 215), stated that whenever a conflict exists in the testimony as to whether the witness is or is not an accomplice, the issue must be submitted to the jury, but, where the facts are undisputed, the sole arbiter is the judge. Here, so far as the record unfolds the situation, no voice was raised in protest or contradiction of the testimony given by Work as to the details surrounding the filthy transaction staged in defendant's office. Under the circumstances it became the plain duty of the trial court to declare that Work was not an accomplice, and in so doing no error was committed.

Additional error is predicated upon the refusal of the lower court to direct a verdict of not guilty, for the reason "there is no testimony in the case connecting the defendant with the commission of the crime outside of the testimony of accomplices." This assignment of error necessitates a brief review of the testimony. Roy Kadel, the person with whom the crime was committed, described in detail every repulsive step taken by defendant in the criminal transaction. Supplementing this testimony is the uncontradicted declaration of Harry Work, heretofore mentioned, and which corroborates Kadel in his statements of many of the situations surrounding the commission of the crime. Above all of this, defendant, when sojourning in Boston, Massachusetts, during the early fall of 1912, and prior to the time of the doing of the act alleged in the indictment, wrote, addressed, and mailed to Roy

Kadel a postal card in words and figures as follows: "9/29/12. Dear Roy: I send you this as a mark of my appreciation of your frequent calls. [Signed] McAllister." The language employed by defendant in this message to Kadel indicates most strikingly the cordial relations existing between them, and manifests defendant's appreciation of Kadel's "frequent calls," which were for an illicit purpose. After considering the testimony on this phase of the case, *en masse,* we can but say the lower court acted wisely in refusing to entertain defendant's motion for a directed verdict.

Grievous complaint is made by defendant of the action of the trial court in permitting evidence to be given conducing to show that defendant had committed the crime against nature with other persons, and, in the court telling the jury "that evidence of other offenses was admitted solely for whatever tendency it may have to show a motive on the part of this defendant for committing the crime with which he is charged by this indictment, and for whatever tendency it may have to show that the defendant was capable of committing the crime charged." To my mind this suggests the most serious aspect presented on appeal.

The case of *State* v. *Start,* 65 Or. 178 (132 Pac. 512), is relied upon by counsel for defendant as conclusive of the law of this case. Start was indicted and convicted of committing the same disgusting crime. An appeal was taken to this court, and the judgment of conviction was reversed for the reason that a majority of this court held that an error was committed by the trial court in admitting evidence to the jury of the commission by the defendant of similar acts of depravity with other persons. I am aware of the large responsibility I assume in disregarding that case, which has never carried conviction to my mind, and unless overruled will remain a fruitful source of embarrassment in administering punishment to those de-

praved individuals affected with moral viciousness and degeneracy. The value of law is its proximity to reason, its certainty and universality. The two latter elements are the support of the rule known as *stare decisis*—to abide by decided cases. The abuse in the administration of law is to adhere blindly to a rule that savors of iniquity simply because it is a judicial decision. The first duty of a court is to decide the law correctly so far as it lies within the human mind. The next duty is to smite that rule of human action which is found to be unjust, however well it may be buttressed by precedent. Great reluctance to overthrow an established doctrine would naturally proceed from an established rule where property rights or individual liberty were at stake; but, where neither one nor the other of these long-respected rights have been intrenched by reason of judicial utterance, no hesitation should deter one from uprooting that rule which he believes to be subversive of common justice. The law of the Start case was made subsequent to the commission of the crime by the defendant McAllister, and after his trial and conviction, and therefore in no wise afforded him an assurance of immunity from the commission of an act for which he had been tried and convicted.

The presiding judge was circumspect in admitting the testimony to which objection is made, and told the jury that it could not be considered for the purpose of showing the character of the defendant, or to excite prejudice against him, or be used to corroborate the testimony of Kadel. That a person cannot be convicted of one offense upon the proof that he committed another is a general rule of law that is certainly so old as to have been long laid up among its settled elements, but to this principle of law are several well-recognized exceptions which doubtlessly were in the mind of the trial court when it allowed the jury to receive evidence

of similar defenses committed by defendant with other persons, upon the hypothesis that the evidence might tend to show a motive and a capacity to commit the crime alleged in the indictment. Criminal motive is the inducement present in the mind of a person, causing him first to intend, then later to commit the crime. It exists as a component in every crime, and frequently is, when discovered, a powerful aid in the detection of the perpetrator. True it is that evidence of an independent crime which has no connection with that for which the accused is on trial cannot be proven simply to disclose a criminal tendency to commit a crime. Yet such evidence is admissible if it shows an emotion which supposedly led defendant to the doing of the act. That is this case. When the state introduced the testimony of independent, yet similar, crimes committed by defendant upon other boys, it showed the emotion which prompted defendant to invite to his private office Roy Kadel, the lad with whom the vile act was committed; that defendant's association with Kadel was for bestial purposes; that defendant's dealings with Kadel were not prompted by natural affection; that defendant courted Kadel's friendship for the purpose of satisfying a lustful and unnatural passion. The inquiry logically arises, what motive induced defendant to usher Kadel into his office? Was it in response to a legitimate business transaction? The law presumes it was. To overcome that presumption and to show that defendant entertained an emotion to perform a forbidden and unnatural act with Kadel evidence of similar crimes with other boys was admitted. Where no motive can be shown it is indeed hard to convince the ordinary juror's mind that defendant has committed the crime with which he is charged, for men do not ordinarily commit unlawful acts unless there is in their minds a motive sufficient to break down the barriers that nature has set up in opposition thereto.

One of these barriers is a controlled and natural sex instinct for the opposite gender, and when men are accused of a crime involving a perverted or inverted sex instinct, it becomes important to seek the motive that impelled the act. Confessedly no man would commit this unnatural act unless his motive be to satisfy a perverted sexual passion, and to prove that emotion it was pertinent to show that defendant had revealed its existence by similar offenses with other persons. ''Mental capacity,'' says Wigmore in his excellent work on Evidence, ''like other human qualities or conditions, may conceivably be evidenced circumstantially by three classes of facts: (1) The person's outward conduct, manifesting the inward and causing condition; (2) pre-existing external circumstances, tending to produce a special mental condition; and (3) the prior or subsequent existence of the condition, from which its existence at the time in question may be inferred'': Section 227.

Mental capacity or capability must not be confounded with a mere tendency to commit a crime, as the latter is never a probative fact in the proof of the commission of an offense. Evidence of the former element must be restricted to that character of crimes coming under the classification of unnatural or abnormal offenses—crimes which alone can be associated with mental abnormality, superinduced by moral depravity. If the crime under consideration is one that a normal man, induced by natural impulses might commit, no purpose would be accomplished by showing the mental capacity of the offender, as that specie of testimony would simply show a tendency or likelihood to commit the crime, but if the crime is one impossible of conception by a normal man, then the capacity or the capability is relative and in fact evidential. By way of a concrete example: A is on trial for the crime of murder, arson, larceny, etc., crimes which are sup-

posed to be the result of a natural and oft-occurring mental impulse. Let us take the first example, murder. Proof of other similar crimes committed by defendant would be incompetent to prove the homicide with which he was charged because that would be proffering evidence of a tendency, and not a mental capacity or capability, to perpetrate the crime. But, reversing the illustration, A is accused of and is on trial for committing the crime against nature, proof of the commission by defendant of crimes of a like nature at other times would evince a mental capacity or abnormal perversity from which guilt of the crime might be logically inferred, as no one would do such an unnatural act unless he possessed an abnormal perversion, which is never presumed, but, on the contrary, must be proven. In virtue of the unnatural quality of the crime the evidence was admissible.

During the delivery of the charge to the jury the court remarked: ''The court thinks that a man with normal sexual instincts is incapable of committing the crime, and that it is only a person of abnormal sexual sense that is capable of committing it. So if you are satisfied that one was possessed of this unnatural or abnormal sexual sense, you might infer that he had a motive, a reason or a force, impelling him to do such an act,'' etc. Defendant insists that this expression of the court invaded the province of the jury, and was prejudicial to defendant. The statute of this state requires the court to present to the jury ''all matters of law which it thinks necessary for their information in giving their verdict, but it shall not present the facts of the case'': Section 139, L. O. L. When the court assumes the existence of a disputed fact, it thereby commits an error, but in this case no dispute arose over the horrible character of the acts, but only as to defendant's commission of the act. Section 729,

L. O. L., authorizes the court to assume certain facts, such as the laws of nature. This crime from its very name suggests that its commission is unnatural, for it is denominated "the crime against nature." Therefore, if its commission is opposed to nature and is unnatural, the court gave utterance. to a truism sanctioned by statute when he said "that a man with normal sexual instincts is unable to commit the crime." No fact is better understood to modern medical science than that sodomy and its allied vicious concomitants are never committed except by persons impelled by a perverted and diseased mind. The court made no error in this respect.

For the reasons herein stated I believe no errors were committed by the trial court and that the judgment of conviction should be sustained, and therefore dissent from the opinion of the majority of the court.

Judgment should be affirmed.

MR. CHIEF JUSTICE MCBRIDE and MR. JUSTICE EAKIN concur.