Argued at Pendleton May 1; reversed June 20, 1944

# STATE *v.* EWING
### (149 P. (2d) 765)

Before BAILEY, Chief Justice, and BELT, LUSK, BRAND and HAY, Associate Justices.

*Charles W. Swan,* of Vale, for appellant.

*Blaine Hallock,* of Baker (I. H. Van Winkle, Attorney General and J. M. Blank, District Attorney, of Canyon City, on the brief), for respondents.

BRAND, J.

The defendant was tried, found guilty, and sentenced upon an indictment, the charging part of which is as follows:

> " 'The said Leland Stanford Ewing on the 15th day of September, A. D., 1941 in the said County of Grant and State of Oregon, then and there being, did then and there unlawfully and feloniously and against the order of nature, have a certain venereal affair with a human being, to-wit: W. L. Miller, the said W. L. Miller being a male person, and the said Leland Stanford Ewing, did then and there sustain osculatory relations with the private parts of the said W. L. Miller, and so the said Leland Stanford Ewing did in the manner and form aforesaid, commit and perpetrate the detestable crime of sodomy, contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Oregon.' "

Before the trial, the defendant had demurred to the indictment upon the alleged ground that more than one crime was charged therein. The overruling of that demurrer forms the basis upon which defendant makes his first assignment of error in this appeal.

BRAND, J.

■ The defendant contends that the indictment charges three distinct crimes: sodomy, sex perversion, and osculatory relationship. The assignment is without merit. The preliminary allegation in the indictment that on the 15th day of September the defendant did "have a certain venereal affair with a human being" *et cetera,* does not sufficiently allege any crime listed in our statutes. The only specific charge is to be found in that portion of the indictment which alleges that the defendant did "then and there" (referring to the time and place of the alleged "venereal affair") "sustain osculatory relations" with W. L. Miller, as more particularly set forth. The indictment continues *"and so"* (italics ours) the defendant did "in the manner and form aforesaid, commit \* \* \*" the crime of sodomy. It is clear that the phrase, "in the manner and form aforesaid," refers to the specific charge which precedes it and cannot be construed as charging any other offense.

Whether the offense which was specifically charged comes within the common law definition of sodomy is immaterial. The statute provides:

"Sodomy. If any person shall commit sodomy or the crime against nature, or any act or practice of sexual perversity, either with mankind or beast, or sustain osculatory relations with the private parts of any man, woman or child, or permit such relations to be sustained with his or her private parts, such person shall upon conviction thereof, be punished by imprisonment in the penitentiary not less than one year nor more than fifteen years." O. C. L. A. § 23-910.

The indictment charges but one act which is within the specific prohibition of the statute. If the act charged was inaccurately called sodomy, the mistake is imma-

terial. However, in the case of *State v. Start*, 65 Or. 178, 132 P. 512, it was held that the specific act charged in the case at bar comes within the definition of sodomy for, upon an indictment charging sodomy, the defendant was convicted upon proof of acts similar to those charged in the case at bar.

■ The second issue presented by the defendant is stated by him as follows:

"When the State establishes several crimes within the period of limitations, none of which occurred on the date in the indictment, the State must elect upon which occurrence it will stand."

It is contended that no election was made and that the court required none. Five different assignments of error are made in support of the foregoing contention.

The prosecuting witness, W. L. Miller, was, at the time of the trial in the circuit court in November, 1943, thirteen years of age. For the purpose of brevity we shall employ the term "prohibited act" in designating the alleged conduct of the defendant in violation of O. C. L. A. § 23-910, supra, as alleged to have been committed by the defendant upon W. L. Miller. The particular prohibited act set forth in the indictment is alleged to have occurred on September 15, 1941. The prosecuting witness, however, testified also that the defendant committed the prohibited act in the summer of 1940 at Shaw Gulch, it appearing from the testimony that the defendant asked the prosecuting witness to go to Shaw Gulch to help him herd turkeys. The defendant testifies to the same trip, but places the date of it as being in July, 1939, instead of 1940. He testifies that the prosecuting witness was then nine years of age.

The prohibited act was again committed at Crescent Camp in the fall or near the end of summer of the same year, according to the testimony of the prosecuting witness. On that occasion the testimony discloses that the defendant, who at the time of trial was forty years of age, was acting as scout master of a troop of Boy Scouts and that the prosecuting witness, a prospective scout, was permitted to go on the camping trip with other boys.

The prosecuting witness testified that at the post office during the winter of 1940-41 the defendant induced him to perform the act prohibited by the statute upon the person of the defendant, but that the defendant did not, on that occasion, perform the prohibited act on the person of the prosecuting witness.

The prosecuting witness testified that in the spring of 1941 he went to the defendant's ranch for the purpose of a fishing trip and that he and the defendant slept together in defendant's room over the woodshed. Witness testified, ''We slept in the bed and practically the same thing happened that I told you.''

The last occurrence concerning which the prosecuting witness testified was in the fall of 1941 at the defendant's ranch. The witness testified that the defendant was guilty of improper conduct with him in the car on the way to the ranch and that the prohibited act was again committed by the defendant upon the prosecuting witness that night in defendant's room over the woodshed. The prosecuting witness testified that the defendant on the same night also attempted to commit upon him the crime of sodomy *per anum.* These are the circumstances under which the defendant contends that error was committed in failing to require an election between acts.

Before the State produced any evidence of the commission of the first of the alleged prohibited acts, the defense objected to the introduction of "any testimony with respect to any act of the type and character laid in the indictment unless the State elects this time and date as being the charge which has been laid in the indictment." The objection of the defense was overruled and it was agreed between counsel that defense might have a continuous objection to all testimony of other acts between the defendant and the prosecuting witness.

At this stage of the trial and before any of the prohibited acts had been shown in evidence, counsel for the prosecution said:

"* * * While the indictment mentions a specific date and we will have testimony bearing upon that transaction, fixing the day at or close to that date as much as possible, we feel we are not confined to proof of the fact that the particular act occurred on that particular date, so long as it is within the statutory period. We also rely upon the principle of law that permits us to develop transactions of this character occurring prior to the date laid in the indictment."

The foregoing is the only statement which could, by any stretch of the imagination, be deemed an election until we come to the final rebuttal argument of the prosecution. At that time, the defense having no opportunity to present argument in answer, counsel for the State said:

"* * * We are basing this case on the Miller boy transaction in the fall of 1941 because that is the closest one named in the indictment. * * *"

Unfortunately for the rights of the defendant, prosecution also stated to the jury:

"* * * If you believe, after you have considered all of this testimony and have heard the instructions

of His Honor, Judge Duncan as to the law, if you believe beyond a reasonable doubt that this crime was committed upon this boy W. L. at any time within three years prior to May 13, 1942, that will be sufficient.''

The court, in its instructions, read the indictment to the jury but at no time did the court inform the jury that in determining the guilt or innocence of the defendant they were limited in determining the truth or falsity of the alleged prohibited act in the fall of 1941 in the room over the woodshed, nor did the court limit the jury to the consideration of any single alleged prohibited act. On the contrary, the court instructed the jury that ''* * * although the indictment names the date September 21st as the day on which the offense was committed, such date is not important if you find beyond a reasonable doubt that such crime was committed within three years prior to the date the indictment was filed * * *.'' Again, the court instructed: ''* * * if the actual act charged in the indictment was committed on a date other than laid in the indictment and within three years prior to that time, then that proof is sufficient. * * *'' Again, the court instructed, with reference to alleged admissions by the defendant: ''* * * if the admission was actually made with reference to the crime charged in the indictment, whether that was committed on the 15th day of September or some other date within three years prior to that time, it would be sufficient.'' (The instruction was corrected to read, ''prior to May 13, 1942, the date the indictment was returned.'')

The instructions contain no reference to, or explanation of, the testimony concerning other alleged offenses committed with the prosecuting witness, nor

were the jurors in any way limited in their consideration of the effect of such evidence. The exceptions taken sufficiently present the issue concerning election between acts for consideration of this court. We are of the opinion that error was committed in the failure of the court to require a specific election at some time prior to the final rebuttal argument of the prosecution and that the instructions of the court erroneously failed to impose the necessary limitations upon the jury and did, in fact, permit them to consider any of the alleged prohibited acts as being the act charged in the indictment. As a result, it is entirely possible that some of the jurors may have found the defendant guilty of one of the prohibited acts, while others relied upon some other and different alleged act.

 The third issue presented by the defendant is stated by him as follows:

"It was not competent for the State to prove other similar criminal acts between the defendant and W. L. Miller."

Six assignments of error are asserted in support of this issue. It is true that other acts between the defendant and the prosecuting witness should not be shown in evidence unless it is made clear which of the alleged acts is the one relied upon for conviction and unless the purpose and effect of the other acts is properly limited, but it is not true as asserted in issue III that it was incompetent for the State to prove other similar and criminal acts between the defendant and prosecuting witness. In a prosecution for a particular offense, evidence tending to show the defendant guilty of another distinct offense disconnected with the crime charged is inadmissible. *State v. Willson*, 113 Or. 450, 230 P. 810, 233 P. 259, 39 A. L. R. 84;

*State v. Gillis,* 154 Or. 232, 59 P. (2d) 679. However, if evidence of a collateral crime tends to prove the crime charged in the indictment, the general rule of exclusion has no application, and evidence which is relevant to the issue is not made inadmissible merely because it tends to prove the commission of another crime. *State v. Bailey,* 90 Or. 627 at 642, 178 P. 201. The specific exceptions to the general rule of exclusion have been frequently set forth in our earlier opinions and will not be reviewed here. *State v. Gillis,* supra. We are concerned only with the well recognized exception to the exclusionary rule which holds that "when the prisoner is charged with any form of illicit sexual intercourse, evidence of the commission of similar crimes by the same parties is admissible to prove an inclination to commit the act for which the accused is put upon his trial." *State v. Gillis,* supra.

The exception which permits evidence of other offenses between the same parties is expressly recognized in *State v. Start,* 65 Or. 178, 132 P. 512, 46 L. R. A. (N. S.) 266 (sodomy); *State v. Hardin,* 63 Or. 305, 127 P. 789 (statutory rape); *State v. Coss,* 53 Or. 462, 101 P. 193 (statutory rape); *State v. Eggleston,* 45 Or. 346, 77 P. 738 (Adultery. Acts before and after date of the offense charged held admissible.); *State v. Robinson,* 32 Or. 43, 48 P. 357 (Statutory rape. Evidence of other offenses between the same parties, both before and after the act charged, held admissible.). Except as issue III involves issue II concerning the necessity of an election, it is without merit.

Issue IV is stated by the defendant as follows:

"It was not competent for the state to prove acts of indecency and indecent conversations with persons other than W. L. Miller."

This issue is presented in various ways by ten separate assignments of error and requires further review of the evidence. On his direct examination, and speaking of an occasion at the approximate time of his arrest, the defendant testified: "They had accused me and they had named over several boys, I would say six or seven." His counsel then admonished him to "confine your testimony entirely to the matter of W. L. Miller." Upon the cross-examination of the defendant by the prosecution, the following transpired:

"Q. You said in your direct examination that these men, either Mr. Bryan or Mr. Church or the Sheriff had mentioned six or seven boys; is that correct?

"A. There was mention of that, yes.

"Q. What boys were mentioned?"

To this question, an objection was interposed by the defense, but was overruled by the court "because the witness testified to that on direct examination." The defendant then answered, "I don't remember the names of the boys."

Upon direct examination, defendant was asked whether he had been guilty of misconduct with W. L. Miller while driving in an automobile, to which the defendant answered, "I heard that evidence; I don't know any reason why I should be doing such a thing." Upon cross-examination the prosecution referred to the foregoing testimony and the defendant was asked what he meant by saying, "I don't know any reason why I should have done such a thing." To this the defendant answered, "What did I mean? I mean my makeup is of a nature that I would not attempt such a

thing or think about doing such a thing." The cross-examination continued as follows:

> "Q. Have you ever attempted or done such things with any boy?
>
> "Mr. Lytle: Object to that as being immaterial.
>
> "The Court: Objection will be overruled; it is of a general nature.
>
> "A. No, I haven't.
>
> "Q. Do you know Thomas Lennon?
>
> "A. Yes, sir.
>
> "Q. Have you done or attempted to do anything of that kind with him?"

To the last question, the defendant objected and the court ruled:

> "My notion is that this cannot go to the extent of showing a crime but to show the motive and condition of mind of the defendant it is proper Cross Examination.
>
> ❊ ❊ ❊
>
> "I think the testimony in the light of the Direct Examination is competent. The objection will be overruled and exception allowed."

The question concerning improper conduct with Thomas Lennon was then repeated and the defendant answered, "Never."

In the course of the continued cross-examination, the defendant was asked concerning purported misconduct relative to the genitals of three other boys who were specifically named. The defendant denied misconduct in the case of each of the four boys named.

After the defense had rested, the State in rebuttal called the Lennon boy and asked him concerning conduct of the defendant upon a previous occasion. Counsel for the defendant made appropriate objection.

The prosecutor assured the court that the testimony offered would not indicate the commission of a crime and upon that assurance, the court overruled the objection. The witness then testified that the defendant had on a previous occasion attempted to take hold of his private parts. Over repeated objection of the defendant, the prosecution was permitted to show by the testimony of three other boys that at various times the defendant had been guilty of similar conduct. While the state did not, by the four boys named, introduce any evidence of the crime of sodomy, it did thereby introduce evidence which would have been sufficient to go to the jury upon a criminal charge of contributing to the delinquency of a minor. *State v. Stone*, 111 Or. 227, 226 P. 430.

■ In *State v. Start*, supra, the rule adopted by this court is briefly set forth in a headnote, as follows:

"In a prosecution for the crime against nature, evidence that the defendant has committed the same offense in the same way with other persons than the one named in the indictment is not admissible under the exception to the rule excluding testimony of other crimes, which permits such testimony, in cases of illicit sexual intercourse, to prove an inclination to commit the act, since that exception is limited to proof of similar crimes between the same parties." Headnote 4, *State v. Start*, 65 Or. 178, 132 P. 512, 46 L. R. A. (N. S.) 266.

In a persuasive dissent, Mr. Justice McBRIDE argued in favor of the admissibility of evidence that the defendant had committed the same crime with other persons, asserting that the case should be held to fall within an exception to the general rule of exclusion which exception is to the effect that "where a crime is an unusual crime committed by unusual means indi-

cating a peculiar habit or system, evidence of other like offenses committed in a same manner may be admitted." This contention was considered and rejected in the Start case. The rule of *State v. Start* was applied in *State v. Wedemeyer,* 65 Or. 198, 132 P. 518.

In *State v. McAllister,* 67 Or. 480, 136 P. 354, a sodomy case, the court said of the majority and dissenting opinions in the Start case:

> "* * * Those opinions examined, with thoroughness and ability, the question as to the admissibility of evidence tending to prove that the defendant had committed the crime against nature with persons other than the one named in the indictment, and the majority of the court held that such evidence was not admissible, while the opinion of the minority came to the opposite conclusion. We do not deem it necessary to re-examine that question in this case. We hold that the rule declared in that case by a majority of the court should be followed." State v. McAllister, supra.

The same rule was applied in *State v. Jensen,* 70 Or. 156, 140 P. 740, wherein the defendant was charged with assault with intent to commit rape. If the question were *res integra,* the position taken by Mr. Justice McBride would merit consideration, but the rule excluding evidence of the commission of the crime against nature upon other persons has been firmly established and we adhere to it. If evidence of offenses of the same character committed with persons other than the one named in the indictment is inadmissible in sodomy cases, it should follow that evidence of offenses of a dissimilar character is likewise inadmissible. The basis of Mr. Justice McBride's dissent is that the act of sodomy committed in the manner set forth in the indictment is so unusual and unnatural that evidence of

the same offense committed in the same unusual manner with others should bring the case within the established exception which permits evidence of other offenses to show peculiar habit or system. In so far as evidence of misconduct with others does not disclose the same unusual method, it fails *pro tanto* to qualify as admissible under the exception.

■ The State first seized upon the defendant's testimony in chief that six or seven boys had been named in accusations against him and the defendant was asked concerning the names of the boys. His answer was that he did not remember. Certainly that testimony did not let down the bars to evidence of bad moral character or to extrinsic evidence of other crimes. The defendant, in denying all charges against him, said, "I don't know any reason why I should be doing such a thing." That statement, also, was insufficient to put his character in issue or to authorize the introduction in evidence of other offenses. Only upon cross-examination did the defendant say, " * * * my makeup is of such a nature that I would not attempt such a thing or think about doing such a thing."

■ Then followed the cross-examination concerning specific misconduct with other boys. It is not contended that the cross-examination was for the purpose of impeaching the defendant's credibility. Furthermore, the State in its brief concedes that if the evidence were offered to prove a lustful disposition towards small boys in general to support an inference that "he, therefore, committed the crime," the evidence "would no doubt be incompetent." The State justifies the cross-examination by reference to the statement of the defendant that he "would not attempt such a thing or think about doing such a thing." In its brief the State

claims that the cross-examination concerning specific acts of misconduct was "offered and received to rebut an affirmative fact offered by defendant in his defense" by showing "that defendant did in fact think of 'such things' because he did 'such things.'" It is by this unique process of reasoning that the prosecution attempted to by-pass the exclusionary rules concerning cross-examination of the defendant and concerning extrinsic evidence of other offenses.

To admit evidence of bad character against an accused it is necessary that he shall already have put his character clearly and expressly in issue. Underhill, Crim. Ev., 4th ed., § 167, p. 293; *People v. Hinksman,* 192 N. Y. 421, 85 N. E. 676. An answer by a defendant on cross-examination to the effect, in substance, that he is not that kind of man does not put his character clearly and expressly in issue, but if character had been put in issue, the prosecution would not have been entitled to prove other specific misconduct by the defendant with other persons in this type of case. Our statute provides that an accused, "when offering his testimony as a witness in his own behalf, shall be deemed to have given to the prosecution a right to cross-examination upon all facts to which he has testified tending to his conviction or acquittal." O. C. L. A. § 26-934. Again, it is provided that a witness may be impeached by certain specified methods, "but not by evidence of particular wrongful acts" except that former conviction of crime may be shown. O. C. L. A. § 4-711. Concerning that statute, this court has said that it

"* * * states the law plainly and does not permit evidence of 'particular wrongful acts,' except it may be shown that the witness has been convicted of a crime. If other particular wrongful acts

on the part of a witness, although the witness may be a defendant in the case, are permitted to be shown, then it would necessitate the investigation of the matters with which the witness is accused and introduces collateral cases. A defendant witness cannot be cross-examined at large to other offenses: State v. Deal, 52 Or. 568 (98 Pac. 165); State v. Holbrook, 98 Or. 43, 45, 63 (188 Pac. 947, 192 Pac. 640, 193 Pac. 434)." *State v. Motley,* 127 Or. 415, 272 P. 561. And see *State v. White,* 48 Or. 416, 87 P. 137; *Redsecker v. Wade,* 69 Or. 153, 134 P. 5, 138 P. 485, Ann. Cas. 1916A, 269.

It is well established that cross-examination of a defendant in a criminal case is limited to the testimony given upon his examination in chief and to facts and circumstances apparently germane to that testimony. Such cross-examination is confined to relevant matters only—to facts to which he has testified tending to his conviction or acquittal. *State v. McCarroll,* 123 Or. 173, 261 P. 411; *State v. Stillwell,* 109 Or. 643, 221 P. 174; *State v. Deal,* 52 Or. 568, 98 P. 165. Under the rule of the McAllister and Start cases, supra, other specific acts of misconduct such as those attempted to have been shown here, were not germane to the testimony given. *State v. La Jesse,* 132 Or. 401, 286 P. 149.

The cross-examination to which we have referred was improper either for the purpose of showing bad character, or for the purpose of disproving defendant's statement that he would "never think of such things." When the State went beyond cross-examination and in rebuttal introduced evidence of four witnesses concerning specific acts of misconduct, more serious error was committed.

■ By his fifth issue the defendant asserts that:

"There was no evidence of admission or confession by the defendant of the crime charged in the indictment."

The testimony of Guy Church, State Police officer, discloses that on December 9, 1941, the defendant was advised of his rights and informed that he was charged with sodomy "and what that meant," and that he made a statement specifically in connection with the Miller boy and said, "I am guilty, it is all my fault, no one to blame but me." Church further testified that the defendant said he would like to immediately secure a judge and plead and get it over with. Here was clear evidence of a confession of sodomy with the prosecuting witness which appears to relate to the act charged in the indictment. Whether the defendant's statement referred to the act alleged to have been committed in September, 1941, or to some previous act, will no doubt be made clear on a second trial. In any event, it was admissible in evidence.

■ It is contended that error was committed when the court, over objection, permitted witness Wayne Davis to testify that the defendant told him that the prosecuting witness, Miller, had sustained osculatory relations with the private parts of the defendant. This testimony related directly to the relations between the defendant and the prosecuting witness and was admissible in evidence whether it referred to the alleged act of September, 1941, or to an earlier act.

■ Upon principles already enunciated, it is clear that State's exhibit 1, an affidavit by Elwin Sullens, concerning misconduct of the defendant with the affiant was erroneously received in evidence. If the witness Sullens had offered to testify at the trial to matters contained in the affidavit, the evidence would have been inadmissible. Receipt of the affidavit by way of impeachment after he, as a witness, had refused to verify the statements therein, constituted a violation

of the rule against impeachment on a collateral matter, for, under the rule laid down in *State v. Start,* supra, evidence of offenses with other persons is collateral and inadmissible.

As his last issue, the defendant contends that he should not have been convicted upon the uncorroborated testimony of an accomplice. The court gave no instruction to the jury as to whether W. L. Miller was or was not an accomplice. At common law there is a rebuttable presumption that children between seven and fourteen years of age are without criminal capacity. 27 Am. Jur. 820. If the infant prosecuting witness was in the possession and exercise of sufficient mentality to make an intelligent choice and possessed a knowledge of right and wrong and of the wrongfulness of the act charged and voluntarily agreed to the act, he would be an accomplice. *People v. Kanngiesser,* 44 Cal. App. 345, 186 P. 388; *People v. Reynolds,* 26 Cal. App. (2d) 219, 79 P. (2d) 150. In view of the presumption, the age of the boy and the testimony, it was for the jury to determine whether or not W. L. Miller was an accomplice. *State v. Carr,* 28 Or. 389, 42 P. 215. In any event, there was corroborating evidence concerning other offenses alleged to have been committed with the same boy, supported by testimony concerning the defendant's own admissions and by portions of his own testimony on the witness stand. *State v. Brazell,* 126 Or. 579, 269 P. 884; *State v. Brake,* 99 Or. 310, 195 P. 583; *State v. Bateham,* 94 Or. 524, 186 P. 5.

We have considered the errors noted in the light of the entire testimony and are reluctantly compelled to conclude that the errors were prejudicial. Exceptions were duly taken, there was no waiver by the defendant, and there is direct conflict in the testimony. Not only

did the defendant, as a witness, deny all of the charges, but he also denied having made the admissions or confessions to which the witnesses for the State had testified. There are some other discrepancies in the testimony for the State.

■ In view of the necessity of the new trial, it should be said that though it is not necessary for the State to prove the commission of the offense on the date set forth in the indictment, it is necessary when several alleged acts of misconduct with the same boy have been proven that the State should elect some one specific act and occasion. Sound practice dictates that the election should be made not later than the close of the State's case in chief and that the court in its instructions should differentiate the corroborative acts tending to show the inclination or lustful disposition of the defendant toward the prosecuting witness from the specific act upon which reliance is placed for conviction.

The judgment of the lower court is reversed and the cause remanded for a new trial.